[No. C005689. Third Dist. June 29, 1990.]

RUDY LOPEZ, Plaintiff and Respondent, v.
ARNOLD FANCELLI et al., Defendants and Appellants.

**COUNSEL**

Barker & Keller, Richard E. Driscoll and Laurie E. Zmrzel for Defendants and Appellants.

Hoppin & Hoppin and Lawrence W. Hoppin for Plaintiff and Respondent.

**OPINION**

**CARR, Acting P. J.**—In this appeal we determine that a default judgment, entered without personal service on a nonappearing defendant of the statutory notice of special and general damages required by Code of Civil Procedure section 425.11, is void.[1]

In the trial court, defendants moved to set aside defaults taken against them. The motions were denied. In this court, defendants contend relief should have been granted in that (1) plaintiff failed to serve them with a statement of damages as required by Code of Civil Procedure section 425.11 and (2) excusable neglect was established. ██ ██ ██ They further assert the damages awarded were excessive as a matter of law. Defendants' first contention has merit and we shall reverse.[2]

### FACTUAL AND PROCEDURAL BACKGROUND

While riding a motorbike owned by his father, Arnold, young Chris Fancelli collided with plaintiff who was riding a three-wheeled vehicle.[3] Counsel for plaintiff contacted Arnold Fancelli's insurance company, Mary-

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] An order denying a motion to vacate a default is nonappealable but may be reviewed on appeal from the default judgment. (*Don* v. *Cruz* (1982) 131 Cal.App.3d 695, 699 [182 Cal.Rptr. 581].) Here, both defendants, Arnold Fancelli and his son Chris, purport to appeal from default judgments and raise issues relating to the denial of their motions to vacate the defaults taken against them. Although defaults were taken against both defendants, judgment was entered only as to Arnold, for reasons unexplained in the record. Technically, Chris's appeal is not properly before us as no judgment has been entered against him.

However, the reversible error committed, i.e., the failure to serve defendants personally with a statement of damages, taints the defaults taken against defendants as well as the default judgment taken against Arnold. In the interest of justice and judicial economy, we therefore treat Chris's purported appeal as a petition for extraordinary relief and resolve the issue presented as to both defendants.

[3] Chris was 10 or 11 years old at the time of the accident. No guardian ad litem has been appointed for Chris, which may be the reason no judgment was taken against him. Any such judgment would be voidable by reason of the lack of appointment of a guardian ad litem. (4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 70, pp. 105-106.)

land Casualty Company (Maryland), and apprised it of plaintiff's injuries. In February 1987, to protect the statute of limitations, plaintiff's complaint for personal injuries and property damage was filed against both Chris and Arnold Fancelli. In the complaint, three causes of action were alleged against Arnold: (1) that Chris was employed by Arnold and operating the vehicle in the course of his employment; (2) that Chris was a permissive user of the vehicle owned by Arnold; and (3) that Arnold entrusted the vehicle to Chris.[4] Chris was alleged to have negligently operated the motorbike.

Communications between plaintiff's counsel and Maryland continued for several months. In May 1987, plaintiff was still undergoing medical care and his damages had not been finally determined. Plaintiff's counsel therefore granted defendants an open extension of time, subject to a 30-day written notice, for answering the complaint.

On August 19, 1987, plaintiff's counsel sent Maryland a demand letter, in which he outlined plaintiff's injuries and reported total damages of $127,052.19 broken down as follows: $3,052.19 in medical bills; lost profits of $2,000 per month for seven months for a total of $14,000; and $110,000 for pain and suffering. Counsel wrote: "This letter is to demand that the matter be settled at this figure or that you otherwise file your answer to our Complaint on or before September 30, 1987. (As you recall, I previously granted to you an open extension of time to answer subject to 30 days' notice). Please consider this letter formal notice to file your answer by September 30, 1987, if the case is not otherwise resolved." Counsel concluded the letter by offering to have plaintiff undergo an independent medical examination to assist Maryland in evaluating his claim.

On August 25, 1987, Maryland replied: "We acknowledge receipt of your correspondence of August 19, and wish to advise at this time we neither accept nor reject your demand. [¶] Obviously, we are going to need verification of [plaintiff's] lost wages. [¶] *We will be sending the file to Counsel to file an answer.*" (Italics added.)

On September 18, 1987, Maryland offered $15,000 to settle plaintiff's claim. This offer was rejected on September 25, at which time counsel again stated plaintiff was willing to submit to an independent medical examination.

There were no further communications between plaintiff's counsel and Maryland. Despite Maryland's stated intention, no answer to plaintiff's complaint was filed and defendants' defaults were taken.

---

[4] The complaint is on one of the skeleton, preprinted forms supplied by the Judicial Council, with boxes to be checked for the appropriate allegations.

Pursuant to section 473, defendants moved to vacate the defaults, asserting plaintiff failed to comply with section 425.11 in that a statement of damages was not personally served on each defendant.[5] They further urged the failure to file an answer by September 30 was due to excusable neglect as Maryland's claim representative was under the impression the deadline for answering was extended as long as negotiations continued.

These claims were disputed, plaintiff's counsel asserting compliance with section 425.11 was effected by serving the demand letter on defendants' insurance carrier. Counsel contended September 30 was clearly set as the deadline to answer and that more than a month passed beyond that date before the request that defendants' defaults be taken.

The trial court denied defendants' motion to set aside the defaults. The court found the demand letter of plaintiff's counsel to the insurance company to be the equivalent of a statement of damages and ruled that section 425.11 did not require personal service of this document on defendants. The court further found that defendants knew the deadline for answering had not been continued and their failure to file an answer to be inexcusable neglect. Defendants' motion for reconsideration was denied.

A default hearing was held in which plaintiff testified as to his damages. Judgment against defendant Arnold Fancelli was entered for $92,552.19.[6] This appeal followed.

### DISCUSSION

■ "Default judgment is a procedural device designed to clear the court's calendar and files of those cases which have no adversarial quality. In order to reach the default stage, a party must follow certain well-defined rules which ensure that a defendant has sufficient knowledge of the pending action. Of course, a defendant may choose to vigorously defend or simply ignore the plaintiff's claims. The rules governing default judgment provide the safeguards which ensure that defendant's choice is a fair and informed

---

[5] Section 425.11 provides in relevant part: "If no request is made for . . . a statement setting forth the nature and amount of damages being sought, the plaintiff shall give notice to the defendant of the amount of special and general damages sought to be recovered (1) before a default may be taken; . . ."

[6] The judgment allocated $3,052.19 to medical expenses; $14,500 to lost wages; and $75,000 to pain and suffering. Defendants contend the judgment must be reduced by $500 because plaintiff's letter sought only $14,000 for lost wages. We do not resolve this issue because we must vacate the defaults and the default judgment due to plaintiff's failure to serve a statement of damages personally upon defendants.

one. [¶] Because default judgment ends the controversy, the rules leading to it are precise and should be followed to the letter. Where a plaintiff fails to adhere to those rules, a defendant need not suffer the consequences a default judgment brings." (*Jones* v. *Interstate Recovery Service* (1984) 160 Cal.App.3d 925, 928 [206 Cal.Rptr. 924].)

■ Section 425.11 provides that before a default can be taken, a plaintiff "shall give notice to the defendant" of the amount of special and general damages sought. This statute "operates in conjunction with . . . section 425.10, subdivision (b), which mandates that a complaint for damages resulting from personal injuries shall *not* state the amount of damages sought. The purpose of the latter statute is to protect defendants from adverse publicity resulting from inflated demands. [Citation.] Section 425.11 was designed to give defendants 'one last clear chance' to respond to allegations of complaints by providing them with 'actual' notice of their exact potential liability. [Citation.]" (Original italics; *Connelly* v. *Castillo* (1987) 190 Cal.App.3d 1583, 1588 [236 Cal.Rptr. 112].)

■ In this case, plaintiff admittedly did not serve a statement of damages on defendants. Instead, a demand letter outlining plaintiff's special and general damages was sent to the insurance adjuster handling the claim for Maryland. Plaintiff asserts this notification met the requirements of section 425.11. Plaintiff errs.

We assume arguendo the letter in question could, under appropriate circumstances, serve as a statement of damages as it specifies the amount of special and general damages sought to be recovered. (Cf. *Plotitsa* v. *Superior Court* (1983) 140 Cal.App.3d 755, 761 [189 Cal.Rptr. 769].) However, it is the lack of personal service on defendants which renders the letter inoperative as a notice of claimed damages.

In *Plotitsa* v. *Superior Court, supra*, 140 Cal.App.3d 755, the court faced a similar problem. After reviewing the purposes behind section 425.11, the *Plotitsa* court held that a default entered without a statement of damages being served on defendant is "void on the face of the record" and may be challenged at any time. (Id. at p. 760.) On the question of whether personal service of the statement of damages was required, the court relied upon *Engebretson & Co.* v. *Harrison* (1981) 125 Cal.App.3d 436 [178 Cal.Rptr. 77], which held that amendments to civil complaints which increase the amount of damages sought must be personally served on a nonappearing defendant before a default for the increased amount can be entered. (140 Cal.App.3d at pp. 759-760.) "*Engebretson* determined that service of such

amendments upon nonappearing defendants is controlled by those statutes governing service of summons on original complaints [citation], under which personal service is required. This conclusion is enhanced by the pragmatic consideration of ensuring fair and effective notice. Nonappearing and defaulting defendants, having determined to allow default in the amount originally prayed for, are more likely to fail to adequately examine an amendment to a complaint served by mail, believing it to be merely a procedural step toward obtainment of judgment in the amount originally sought." (*Id.* at p. 760.)

The *Plotitsa* court concluded: "The parallel functions of amendments increasing damage demands of nonsection 425.11 complaints and 'statements of damages' attendant to section 425.11 complaints require the conclusion that the personal service required of the former in *Engebretson* also be required of the latter." (140 Cal.App.3d at p. 760.)

Case law has uniformly demonstrated a similarly strict adherence to the language and purposes of section 425.11. In *Stevenson* v. *Turner* (1979) 94 Cal.App.3d 315 [156 Cal.Rptr. 499], no statement of damages was served on defendant at any time before default was entered. (*Id.* at p. 319.) Reversing the judgment, the court concluded, "The failure of plaintiff to serve the statement of requested damages deprived defendant of any actual notice of her potential liability; it thus cannot be said that the omission was harmless." (*Id.* at p. 320.)

In *Petty* v. *Manpower, Inc.* (1979) 94 Cal.App.3d 794 [156 Cal.Rptr. 622], a default judgment was also reversed for failure to serve a statement of damages. The court noted "a defendant must be given notice of what judgment may be taken against him" and concluded, "A judgment by default in excess of the amount of the relief demanded by the prayer denies the defaulting defendant a fair hearing and is an act in excess of jurisdiction. [Citations.] It would appear that where no specific amount of damages is requested that any amount would be in excess of that demanded." (*Id.* at p. 798.)

In *Twine* v. *Compton Supermarket* (1986) 179 Cal.App.3d 514, 517-519 [224 Cal.Rptr. 562], the court set aside a default judgment in part because plaintiff had mailed a statement of damages to defendant rather than personally serving him.

A seemingly contrary result was reached in *Beeman* v. *Burling* (1990) 216 Cal.App.3d 1586 [265 Cal.Rptr. 719], wherein the court found plaintiff had

complied with section 425.11 by mailing a statement of damages to defendant's attorney.[7] However, *Beeman* is distinguishable from these other cases. In *Beeman,* the defendant had appeared in the action and was represented by counsel who had in fact received the statutory notice. (*Id.* at p. 1594.) The court refused to extend the personal service requirement to a defendant who had appeared in the action. (*Ibid.*)

Although defendants in this case did not make an appearance in the action, plaintiff asserts *Plotitsa* and other cases are distinguishable in that these defendants were not unrepresented; their interests were being protected by Maryland, their insurance company. Plaintiff cites no authority permitting such substituted service and we find his argument unpersuasive.[8] Section 425.11 requires notice be served on *defendants,* not another interested party. We agree with the *Plotitsa* court: to further the purposes of section 425.11, personal service of a statement of damages must be made on a defendant. Such a requirement imposes only a minimal burden on a plaintiff yet provides much needed protection for a defendant. ▮ The rules pertaining to defaults and default judgments must be precisely followed to ensure that a defaulting defendant is aware of plaintiff's claims.[9]

---

[7] The court relied on section 1010, which provides in relevant part: "Notices and other papers may be served upon the party or attorney in the manner prescribed in this chapter, when not otherwise provided by this code." Nothing in section 425.11 prohibits service upon an attorney. (*Beeman* v. *Burling, supra,* 216 Cal.App.3d at p. 1594, fn. 3 and accompanying text.)

[8] Plaintiff relies on *Don* v. *Cruz, supra,* 131 Cal.App.3d 695, a case we find inapposite. In *Don,* the issue presented was whether a defendant could be relieved from a default taken as a result of the unexcused neglect of the defendant's insurance carrier. Defendant asserted an insured should not be required to explain the carrier's actions but should be granted relief if the insured's reliance on the carrier was reasonable. (*Id.* at p. 700.) The court disagreed and concluded the inexcusable neglect of an insurance carrier was chargeable to defendant: "In a personal injury action the defendant's insurer is, in effect if not in law, the real party in interest [citation], yet the proposed rule would permit the insurer to willfully or recklessly ignore filing deadlines with impunity, shielding itself behind the blamelessness of its insured while it makes a shambles of orderly procedure. 'When inexcusable neglect is condoned even tacitly by the courts, they themselves unwittingly become instruments undermining the orderly process of the law.' [Citation.]" (*Id.* at p. 701.)

The question of who bears responsibility for the unexcused neglect of an insurance company has no bearing on the issue presented here, i.e., who must be served with a statement of damages. The language of section 425.11 and cases construing that provision compel the conclusion that it is the defendant who must receive notice, not his insurance company or another interested party. Contrary to plaintiff's belief, holding a plaintiff to these simple requirements will not "create a shambles of the practice of tort law in the State of California."

[9] Our resolution of this issue obviates the need to address defendants' remaining contentions.

## DISPOSITION

The trial court is directed to set aside the defaults taken against both defendants as well as the default judgment entered against defendant Arnold Fancelli. Defendants shall recover their costs on appeal.

Sims, J., and Davis, J., concurred.