[No. B155744. Second Dist., Div. Four. Mar. 10, 2003.]

MICHAEL SCOGNAMILLO, Plaintiff and Respondent, v.
LARRY HERRICK et al., Defendants and Appellants.

COUNSEL

Horvitz & Levy, David M. Axelrad, Karen M. Bray; Millard, Pilchowski, Holweger, Child & Marton, Andrew J. Marton and Russell W. Schatz for Defendants and Appellants.

Law Office of Scott D. Dinsmore and Scott D. Dinsmore for Plaintiff and Respondent.

OPINION

VOGEL (C. S.), P. J.—

### INTRODUCTION

In this case arising out of an automobile accident, defendants and appellants Larry Herrick and White Knight Limousine Service appeal from a default judgment in favor of plaintiff and respondent Michael Scognamillo. Defendants contend that the trial court's entry of default is void because Scognamillo failed to file a statement of damages with the court, although defendants were served with the required statement. Defendants further contend that the trial court abused its discretion in denying defendants' motion for relief from default as they demonstrated excusable neglect. We reject both of these contentions.

Defendants further argue that the judgment must be reversed because a portion of the damage award was not supported by sufficient evidence, and because the trial court failed to reduce to present cash value the portion of the award representing future medical expenses and lost earnings. We agree with these contentions and we therefore reverse a portion of the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

In late March 2000, Scognamillo and Herrick were involved in a car accident while Herrick was in the course and scope of his employment for White Knight Limousine Service, a business of which Herrick is part owner. Herrick notified Fullerton Insurance Services (Fullerton), his insurance broker, of the accident, and it notified Ward North America (Ward), the third party administrator for United States Fidelity and Guaranty Company, which insured White Knight.

Ward's claims account manager, Sharon McGaff, set up a file on the matter on April 6, 2000. Scognamillo's insurer, State Farm, pursued a

property damage subrogation claim. Ward paid Scognamillo $600 on July 24, 2000, to resolve the claim, and Ward then closed its claim file.

On March 26, 2001, Scognamillo, represented by Attorney Scott D. Dinsmore, filed a personal injury lawsuit against Herrick and White Knight. Scognamillo served Herrick and White Knight with the summons and complaint on March 30, 2001. Defendants failed to file an answer to the complaint. After receiving no response, Dinsmore mailed a request for entry of default to defendants on July 12, 2001, and the clerk entered defaults against defendants on July 16, 2001.

On August 16, 2001, defendants filed a motion to vacate the default pursuant to Code of Civil Procedure section 473, on the basis that the default was entered as a result of extrinsic mistake, inadvertence, or excusable neglect.[1] In support of the motion, defendants filed declarations by Herrick, a claims account manager for defendants' insurance carrier, and the attorney retained by the insurance carrier to represent defendants after the default was entered.

Herrick stated in his declaration that he hand-delivered the summons and complaint to his insurance broker, Fullerton, and was told the matter would be taken care of and that he had coverage for the accident. A few weeks later, plaintiff's counsel Dinsmore called Herrick and asked if he had forwarded the summons and complaint to his insurance provider; Herrick said he had done so. Herrick called Fullerton and asked if the summons and complaint had been sent to the insurance carrier. The broker later confirmed that the summons and complaint had been sent, and assured Herrick everything would be handled. Herrick could not recall if he had any later conversations with Dinsmore regarding the summons and complaint.

In July 2001, Herrick received a copy of a request for entry of default. He called his insurance broker to make sure his interests were being protected. The broker later told Herrick that it was taken care of and not to worry.

On August 3, 2001, Herrick received a message from Attorney Andrew Marton that the matter had been referred to his office for handling by Ward.

Steve McCloud, the insurance carrier's claims account manager, stated in his declaration that Ward had undergone a complete change in personnel after the property damage subrogation claim was resolved in July 2000. He further stated that his review of Ward's claim file indicated that Ward

---

[1] All further statutory references are to the Code of Civil Procedure unless indicated otherwise.

received a copy of the summons and complaint on April 6, 2001, along with a letter addressed to Sharon McGaff, who no longer worked there. "Based upon my review of the file material, I believe that one of the office clerks opened this letter and inadvertently placed it into the claim file for this matter which was closed. The letter was never brought to my attention, or the attention of any other claims representative. I believe that the complete change over of office personnel contributed to the inadvertent filing of the document without appropriate review. The clerk that was employed at this time is no longer employed with Ward North America." McCloud then states that on July 19, 2001, he was notified by Fullerton about the default.[2] He contacted Attorney Marton, who learned from plaintiff's counsel that a default was entered on or about May 1, 2001. Marton contacted Dinsmore, who later informed him that Scognamillo was unwilling to stipulate to set aside the default.

Scognamillo filed opposition to the motion to vacate the default. The opposition was supported by the declaration of Scognamillo's attorney, Dinsmore. Dinsmore stated in his declaration, based upon written notes in his file regarding telephone conversations he had with Herrick, that Herrick first phoned him on March 30, 2001, saying he believed the case had been resolved by his insurance carrier. Dinsmore told Herrick this was a personal injury action which had not been resolved, and suggested he forward the complaint to his insurance carrier.

Dinsmore called Herrick on May 7, 2001, and told him the time to respond to the complaint had expired and that defendants were therefore in default and could have default judgments entered against them. Herrick said he sent the complaint to his insurance broker and was told the complaint would be transferred to his insurance carrier. Dinsmore advised Herrick to call his insurance carrier immediately because they had made a serious error which could result in default judgments being entered.

Dinsmore called Herrick again on May 31, 2001, and told him no response had been filed or served. Herrick said he spoke to his insurance broker, who said the complaint had been forwarded to his insurance carrier and they were handling it. Herrick said the broker gave him the insurer's telephone number, and Herrick personally called and was told the insurance carrier would handle the matter. Dinsmore told Herrick he would be required to enter default judgments against the defendants if he did not receive a response to the complaint immediately. Herrick said he would call his insurance carrier again and call Dinsmore back. Dinsmore received no further communication from Herrick.

---

[2]McCloud incorrectly refers to the entry of default as entry of a default judgment.

Dinsmore prepared a statement of damages and instructed his attorney service to serve the statement on defendants; service of the statement of damages occurred on June 4, 2001 (by substituted service on Mrs. C. Herrick at Herrick's residence). After receiving no response, Dinsmore mailed a request for entry of default to defendants on July 12, 2001, and the clerk entered defaults against defendants on July 16, 2001.

Defendants filed a reply to the opposition to the motion for relief from default but did not provide any further declarations as to the circumstances leading up to the entry of default.

The motion for relief from default was heard on September 19, 2001. The trial court denied the motion to vacate, finding that defendants failed to demonstrate excusable neglect on the part of the insurance carrier, and set the matter for a default prove-up hearing on October 26, 2001.

Scognamillo testified at the prove-up hearing that in March 2000 his car was struck by a limousine driven by Herrick. The next day he began feeling lower back pain which radiated down his leg. His doctor told him to discontinue any exercise or physical activity.

Scognamillo testified that he is a carpenter and his annual income is about $100,000. He said that as a result of his injuries he has been able to do approximately 20 percent less work than before the accident.

Scognamillo's treating physician, Dr. Lewis Wong, a general practitioner, testified that Scognamillo has been his patient for 10 years, and had never complained of back pain prior to the car accident. An MRI revealed that Scognamillo had two disc bulges and significant nerve impingement in his lower back. Wong prescribed physical therapy, various medications, and acupuncture. He concluded, however, that surgery is required to alleviate Scognamillo's back problems. Wong testified that "the usual procedure is to do the worst disc first and see, because of the risk of the surgery, see how much improvement there is. And if everything goes well, then perhaps, if everything goes well, proceed with the second disc."

Wong testified that the total cost of the first surgery would be $34,500, and the same cost less $2,000 for the second surgery, or $32,500. Scognamillo would be unable to work for six to 12 months following each surgery.

Scognamillo's counsel summarized the damages requested as follows: $34,500 for the first surgery, $32,500 for the second surgery, $6,440 in past

medical expenses, $30,000 in past lost earnings, $150,000 in future lost earnings due to incapacity following the two surgeries, and $150,000 in general damages for pain and suffering. The court awarded Scognamillo $403,440, the full amount requested.

This appeal from the judgment followed.

## DISCUSSION

■ Appellants have appealed from the judgment and the denial of the motion to set aside the default. "As a general rule, orders *denying* a motion to vacate are *not* appealable, because any assertions of error can be reviewed on appeal from the judgment itself. To hold otherwise would effectively authorize two appeals from the same decision. [Citations.]" (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2002) ¶ 2:169, p. 2-89.) "[A]n order denying a motion to vacate a *default entry* (rather than the default judgment) is *nonappealable*. [Citations.] A default entry is reviewable only on appeal from the default judgment. [Citations.]" (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs, *supra*, ¶ 2:172, pp. 2-89 to 2-90.) This appeal comes within the exception allowing review of the order denying the motion to vacate the default as it is properly raised in the appeal from the judgment.

### I. *A Statement of Damages Was Served on Defendants As Required*

■ Defendants argue that, although Scognamillo served defendants with the statutorily required statement of damages prior to the entry of default, he failed to file with the court a copy of the statement of damages, instead filing only the proofs of service demonstrating defendants were served with the statement of damages. They contend that the default entered thereafter was void as beyond the trial court's jurisdiction based on the failure to *file with the court* the statement of damages. We disagree.

Code of Civil Procedure section 425.11 provides in relevant part as follows:

"(b) When a complaint is filed in an action to recover damages for personal injury or wrongful death, the defendant may at any time request a statement setting forth the nature and amount of damages being *sought.* . . .

"(c) If no request is made for the statement referred to in subdivision (a), the *plaintiff shall serve the statement on the defendant before a default may be taken.*

"(d) The statement referred to in subdivision (b) shall be served in the following manner:

"(1) If a party has not appeared in the action, the statement shall be served in the same manner as a summons." (Italics added.)

Defendants cite appellate court cases in which defaults and the ensuing default judgments were held invalid based on failure by the plaintiffs to properly serve section 425.11 statements of damages on defendants. (See *Lopez v. Fancelli* (1990) 221 Cal.App.3d 1305 [271 Cal.Rptr. 87]; *Petty v. Manpower, Inc.* (1979) 94 Cal.App.3d 794 [156 Cal.Rptr. 622].) In the present case, however, there is no dispute that Scognamillo did properly serve a statement of damages on defendants. His only failure was to file with the court a copy of the statement of damages itself along with the admittedly proper proofs of service thereof. Defendants argue that the clerk had no way to know whether the statement contained a stated amount of damages, as required by section 425.11, rather than a request for damages according to proof, and thus defendants failed to *prove* they provided the notice due process requires.

By its terms section 425.11 requires that a plaintiff personally serve on defendant a statement setting forth the nature and amount of damages being sought; it does not require the statement to be filed with the court. The purpose of section 425.11 is to " 'give defendants "one last clear chance" to respond to allegations of complaints by providing them with "actual" notice of their exact potential liability. [Citation.]' " (*Lopez v. Fancelli, supra,* 221 Cal.App.3d at p. 1310, quoting *Connelly v. Castillo* (1987) 190 Cal.App.3d 1583, 1588 [236 Cal.Rptr. 112].) Defendants here received actual notice of the nature and amount of damages being sought, and thus the purpose of section 425.11 was fully achieved. We conclude that Scognamillo's failure to *prove* to the court that he had served a statement which specified the nature and amount of damages is merely an irregularity that does not render the default void. The important point is that defendants received the required actual notice of their potential liability.

Defendants further contend that "[e]vidence of the exact content of the statement of damages is also critical to the entry of a default judgment, as the trial court's jurisdiction to enter such judgment is limited to the amount set forth in the statement." The amount of the judgment here does not exceed the amount requested in Scognamillo's statement of damages, however, and the judgment therefore cannot be said to be in excess of the court's jurisdiction. We disagree with defendants' contention that "the court lacked jurisdiction to award any amount by means of a default judgment"; it merely

lacked jurisdiction to award a judgment in excess of the amount requested in the statement of damages. It did not do so. We find no error in this regard requiring reversal of the default.

## II. *No Showing of Excusable Neglect to Justify Vacating the Default*

Defendants further contend that the trial court abused its discretion in denying their motion for relief from default, arguing that Herrick's neglect, if any, was excusable, and that he should not be penalized for his insurer's neglect, which was also excusable.

A motion seeking relief from default is within the sound discretion of the trial court and its decision will not be disturbed absent an abuse of discretion. (*Elston v. City of Turlock* (1985) 38 Cal.3d 227, 233 [211 Cal.Rptr. 416, 695 P.2d 713].) The strong policy favoring trial on the merits ordinarily prevails, resulting in reversal of an order denying relief, unless inexcusable neglect is clear. (*Id.* at p. 235.) We conclude that Herrick's conduct was reasonable, but that of his insurer clearly constituted inexcusable neglect, and the trial court did not abuse its discretion in denying relief.

According to both sides, Herrick promptly delivered the summons and complaint to his insurance broker. Thereafter he called his insurance broker at least twice to inquire about the handling of this lawsuit, once after receiving a call from plaintiff's counsel and once after receiving a request for entry of default. He was reassured each time that the matter was being handled.

As to the conduct of the insurance carrier, the declarations show that it received the summons and complaint but apparently misfiled the documents in the closed property damage subrogation claim file in early April 2001. *After that,* Herrick twice contacted his insurance broker, who assured him that everything was being handled. According to plaintiff's counsel, Dinsmore, Herrick told him in late May 2001 that he had called both the insurance broker and the insurance carrier and was told the insurance carrier would handle the matter.[3] Defendants did not produce a declaration from the insurance broker, and the declaration from McCloud, the claims account manager, is absolutely silent regarding anything that occurred after the complaint was misfiled and before he was informed a default had been

---

[3]Herrick specifically recalls only one telephone conversation with Dinsmore, plaintiff's counsel, but does not deny that other conversations occurred as stated in Dinsmore's declaration.

entered. Thus, there is no explanation why, having apparently been informed by the insurance broker and its insured that an active lawsuit was pending, the insurance carrier utterly failed to take action. Based upon this showing, inexcusable neglect on the part of the insurance carrier is manifest. The question then becomes whether a blameless insured is to be charged with the inexcusable neglect of its insurer.

In *Don v. Cruz* (1982) 131 Cal.App.3d 695 [182 Cal.Rptr. 581], the Court of Appeal upheld a trial court's denial of relief from default where the defendant alleged he reasonably relied on an insurance carrier to defend a personal injury action, but made no showing that his carrier's inaction was excusable. The court held that the defendant, in order to obtain relief from default, must also establish justification for the inaction of the carrier. (*Id.* at p. 702.) The court reasoned that a rule requiring only that the insured demonstrate reasonable reliance on its insurer "would permit the insurer to willfully or recklessly ignore filing deadlines with impunity, shielding itself behind the blamelessness of its insured while it makes a shambles of orderly procedure. 'When inexcusable neglect is condoned even tacitly by the courts, they themselves unwittingly become instruments undermining the orderly process of the law.' (*Transit Ads, Inc.* v. *Tanner Motor Livery, Ltd.* (1969) 270 Cal.App.2d 275, 282 [75 Cal.Rptr. 848].)" (*Don v. Cruz, supra,* 131 Cal.App.3d at p. 701.) We agree with the reasoning as stated in *Don v. Cruz.*

We disagree, however, with defendants' assertion that *Don v. Cruz* is no longer viable authority. Relying on *Rogalski v. Nabers Cadillac* (1992) 11 Cal.App.4th 816 [14 Cal.Rptr.2d 286] (*Rogalski*), defendants assert that the amendment of section 473 in 1988—by which a client is no longer to be charged with the inexcusable negligence of his or her attorney which leads to a default and where relief would be mandatory—"demonstrates that the Legislature disfavors punishing defendants for the failings of others charged with the responsibility of defending an action."[4] We disagree with both appellant's contention and with the reasoning stated in *Rogalski.*

The Legislature could have but did not include insurance carriers within the mandatory relief provision when amending section 473. There is no indication that the Legislature intended that insureds who reasonably rely on their insurance carriers should not be charged with the inexcusable

---

[4]In *Rogalski*, the appellate court reversed the trial court's denial of section 473 relief where the defendant's insurer, despite assurances that it would respond to the complaint, decided at the last moment not to file an answer on behalf of the insured based on its decision to deny coverage, and took no steps to protect the rights of its insured.

negligence of their carriers. We see no reason to question the viability of *Don v. Cruz,* and we decline to adopt the approach taken by the court in *Rogalski.* In short, we find no abuse of discretion in the trial court's refusal to condone the inexcusable negligence of defendants' insurer.

### III. *The Damages Awarded Were Speculative*

Defendants contend that the damages awarded by the trial court were erroneous because the court awarded damages for two back surgeries despite the fact the evidence was entirely speculative as to whether the second surgery would ever occur, and because the trial court failed to reduce its award for future damages to present cash value.

Scognamillo contends that review of the sufficiency of the evidence is not available on appeal from a default judgment, except where the damages awarded are the result of passion, prejudice, or corruption, or the amount is so out of proportion to the evidence that it shocks the conscience of the appellate court. (See *Heathman v. Vant* (1959) 172 Cal.App.2d 639, 645 [343 P.2d 104]; *Uva v. Evans* (1978) 83 Cal.App.3d 356, 364-365 [147 Cal.Rptr. 795].) We conclude, however, that the issue of speculative damages is subject to review where, as here, the damages awarded are unsupported by sufficient evidence.

As stated in *Ostling v. Loring* (1994) 27 Cal.App.4th 1731, 1745 [33 Cal.Rptr.2d 391]: "It might be objected that an appeal does not afford a remedy under the general rule that the sufficiency of the evidence tendered in a default proceeding cannot be reviewed on an appeal from a default judgment. [Citations.] Doubtless this is true as to matters for which no proof is required by virtue of the admission by default of the allegations of the complaint. [Citation.] However, as to damages which, despite default, require proof the general rule does not apply." As noted by the court in *Ostling v. Loring,* the court in *Uva v. Evans, supra,* 83 Cal.App.3d 356, examined the evidence presented at a default judgment hearing to determine if the damages were "totally unconscionable and without evidentiary justification." (*Uva v. Evans, supra,* 83 Cal.App.3d at pp. 363-364; see *Ostling v. Loring, supra,* 27 Cal.App.4th at p. 1746.) "Damages for which there is no substantial evidence, a fortiori, satisfy this standard." (*Ostling v. Loring, supra,* 27 Cal.App.4th at p. 1746; see also *Don v. Cruz, supra,* 131 Cal.App.3d 695, 707 [trial court may grant new trial after default judgment upon showing of lack of substantial evidence of damages].)

As to the damages awarded by the trial court arising out of a possible second back surgery, we agree with defendants' contention that the evidence that such a surgery would occur was entirely speculative. Civil Code section 3283 provides that "[d]amages may be awarded, in a judicial proceeding, for detriment resulting after the commencement thereof, or *certain to result in the future*." (Italics added.) (See *Bellman v. San Francisco H. S. Dist.* (1938) 11 Cal.2d 576, 588 [81 P.2d 894]; see also BAJI No. 14.60 ["Do not award a party speculative damages, which means compensation for future loss or harm which, although possible, is conjectural or not reasonably certain"].)

While Wong testified that surgery is required to alleviate Scognamillo's back problems, he said that "the usual procedure is to do the worst disc first *and see*, because of the risk of the surgery, *see how much improvement there is. And if everything goes well, then perhaps, if everything goes well, proceed with the second disc*." (Italics added.) Whether the second surgery will ever be performed could hardly have been couched in more speculative terms. From this testimony it appears possible that one surgery might sufficiently alleviate plaintiff's problems, or that a second surgery might be deemed to not be worth the risk. Having only the quoted testimony as support for the award of damages arising out of a second surgery, we must conclude that the trial court did not have before it sufficient evidence, based on a reasonable medical probability, to make such an award. The judgment must be reversed to the extent that Scognamillo was awarded $32,500 in medical expenses for a second surgery.

It follows, too, that the award of damages in the amount of $75,000 for prospective loss of earnings due to a second surgery is similarly unsupported by sufficient evidence and must be reversed.

Finally, the record on appeal also indicates that the trial court apparently did not reduce to present cash value the award for future lost wages for the first surgery, as it should have done. (*Niles v. City of San Rafael* (1974) 42 Cal.App.3d 230, 241-242 [116 Cal.Rptr. 733].) In light of these circumstances, we will reverse the judgment and remand the matter to the superior court for reconsideration of the amount of damages to be awarded. The trial court is directed to reduce to present cash value the amount of the award representing future damages.[5] Defendants are not entitled to participate in the second judgment hearing. (See *Barragan v. Banco BCH* (1986) 188 Cal.App.3d 283, 302-302 [232 Cal.Rptr. 758].)

[5]See appendix B referred to in BAJI No. 14.70 (9th ed. 2003 supp. to vol. 2) page 11.

## DISPOSITION

The order denying defendants' motion to vacate the default is affirmed. The default judgment is affirmed in part, and reversed in part as explained in this opinion. The parties are to bear their own costs on appeal.

Epstein, J., and Curry, J., concurred.