Filed 4/9/14  Nichols v. Brugger CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CLARISSA LONN-NICHOLS, Plaintiff and Appellant, v. THEODORE BRUGGER, Defendant and Respondent. | F066232 (Super. Ct. No. 633151) OPINION |

-ooOoo-

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Stanislaus County. Roger Beauchesne, Judge.

Jakrun S. Sohdi, for Plaintiff and Appellant.

McNamara, Ney, Beatty, Slattery, Borges & Ambacher, Wilma J. Gray and Christopher T. Lustig for Defendant and Respondent.

-ooOoo-

---

[*]     Before Cornell, Acting P.J., Kane, J. and Franson, J.

A jury awarded appellant, Clarissa Lonn-Nichols, $109,342.37 for personal injury damages stemming from a traffic collision. The trial court granted respondent Theodore Brugger's motion for judgment notwithstanding the verdict (JNOV) and struck the jury's award of $49,500 for future medical expenses on the ground the evidence was insufficient as a matter of law to support the jury's verdict as to that award. Subsequently, an amended judgment was entered for Lonn-Nichols in the amount of $59,842.37. Lonn-Nichols appeals, challenging the granting of the JNOV.[1] We will affirm.

## FACTS AND PROCEDURAL HISTORY

In November 2006, Brugger's truck ran a red light and struck the car Lonn-Nichols was driving. Lonn-Nichols was transported to the hospital in an ambulance with left hand, arm and neck pain. At the hospital, her neck was X-rayed, her arm was splinted, and she was discharged with instructions to followup with her primary care physician, Dr. Knapp, which she did promptly. She had a stiff neck and upper back, which Dr. Knapp diagnosed as a cervical thoracic sprain. Dr. Knapp referred her to an orthopedist, who diagnosed two broken bones in her hand and casted her arm.

Lonn-Nichols continued to see Dr. Knapp for neck pain and headaches, which he treated with medications and physical therapy, but her pain persisted. In 2009, Dr. Knapp referred her to Dr. Levin, a neurologist, who diagnosed a C5-6 cervical disc protrusion with radiculopathy. At trial, Dr. Levin testified he had not seen Lonn-Nichols since April 2010, but examined her on June 6, 2012, in the court hallway before he testified. Dr. Levin opined that Lonn-Nichols's problems would probably not resolve on their own and future treatment options for problems such as hers would include physical therapy, pain management and possibly surgery. In 2012, Dr. Knapp referred Lonn-Nichols to Dr. Ma, a neurologist, for neck pain and headache. Dr. Ma did not testify but her medical records

---

[1] Lonn-Nichols does not challenge the order on the new trial motion.

2

were admitted at trial. The records indicated there was no evidence of cervical radiculopathy, but a recent MRI showed degenerative disc disease changes at the C5-6 level. Dr. Ma prescribed medications and physical therapy.

Lonn-Nichols's attorney referred her to Dr. Casey, an orthopedic surgeon, who saw her in August 2010. Dr. Casey diagnosed a C5-6 disc protrusion with associated radiculopathy. To treat her headaches, he recommended trigger point injections around her cervical spine to relieve neck tension, which often caused headaches. While the shots would help, he did not feel she was going to get better because her headaches were by then chronic. If the trigger point injections no longer worked, he would try epidural steroid injections. Dr. Casey did not know the cost of trigger point injections.

Lonn-Nichols's past medical expenses related to her injuries totaled $12,957.37. Those expenses included $694.69 to Dr. Knapp, $281.46 to Dr. Levin for three visits, and $932.23 to Dr. Ma for three visits. She also paid $800.61 for 11 or 12 sessions of physical therapy, $804 for massage therapy, and $4,895 for 53 chiropractic visits. Regarding future treatment, she anticipated treatment and monthly "shots" from Dr. Knapp and continued treatment with Dr. Ma, "possibly" Dr. Levin, and whomever else Dr. Knapp referred her to.

Dr. Klein, an orthopedic surgeon who testified for the defense, examined Lonn-Nichols in March 2011. Dr. Klein opined that Lonn-Nichols's headaches and neck pain did not result from injuries she suffered in the collision.

At trial, Brugger conceded liability; the only issue for the jury was damages. In closing argument, Lonn-Nichols asked the jury to award specific amounts for past medical expenses and past lost wages, and suggested several ways for computing general damages. She also argued she would require trigger point injections every three to four months for the rest of her life but did not suggest a method to determine the costs of that treatment. The jury was instructed that a 32-year-old female (Lonn-Nichols's age) had a remaining life expectancy of 50.3 years.

During deliberations, the jury asked, "Which doctor does the injections?" and "What are her out-of-pocket costs per shot [trigger point injections]?" After conferring with counsel, the court told the jurors that as to the first question, the court reporter would look at her notes over the weekend and report back on Monday. As to the second question, there was no evidence presented regarding Lonn-Nichols's out-of-pocket costs per trigger point injection. The jury then left for the weekend. The jury resumed deliberations on Monday and reached a verdict before the court reporter reported her findings to them.

The jury awarded damages as follows:

| | |
|---|---|
| Past medical damages | $12,957.37 |
| Past wage loss | $8,750 |
| Future medical expenses | $49,500 |
| Future wage loss | $0 |
| Past pain and suffering | $2,000 |
| Future pain and suffering | $36,135 |
| TOTAL | $109,342.37 |

Subsequently, Brugger moved for JNOV and for new trial pursuant to Code of Civil Procedure section 629, on the ground that the evidence was insufficient as a matter of law to support the jury's verdict as to future medical expenses. In support of the motions, counsel submitted two juror affidavits stating that the $49,500 amount of future medical expenses was based on juror speculation that the cost of the injections would be $1,500 per year for the remainder of Lonn-Nichols's working life--33 years.

In opposition to the motion, Lonn-Nichols objected to the juror affidavits but submitted an affidavit from a third juror stating that the future medical expenses award resulted from the fact that medical expenses for treatments and medications for the five years since the collision amounted to $12,900. That information coupled with Lonn-Nichols's 33-year working career provided the basis for the future medical expenses

4

award. The jury did not come up with a figure for trigger point injections because there was no evidence of their costs. Lonn-Nichols argued the jury could draw reasonable inferences about the cost of future medical care from the cost of past medical care.

The trial court sustained the objections to the juror affidavits and granted JNOV as to the jury's award of $49,500 for future medical expenses, and conditionally granted the motion for new trial unless the plaintiff consented to the reduction of future medical expenses to zero. The court concluded there was no substantial evidence justifying the award for future medical expenses.

## DISCUSSION

On appeal, Lonn-Nichols challenges the order granting the motion for judgment notwithstanding the verdict. She contends the court used an improper standard and ignored reasonable inferences that supported the jury's verdict.

### *Standard for Granting JNOV and Standard of Review*

A party is entitled to JNOV only if there is no substantial evidence to support the verdict and the evidence compels a judgment for the moving party as a matter of law. (*Paykar Constr. v. Spilat Constr. Corp.* (2001) 92 Cal.App.4th 488, 493.) The trial court must view the evidence in the light most favorable to the verdict, disregard conflicting evidence, and indulge in every legitimate inference to support the verdict. (*Id.* at p. 494.) On appeal, we determine de novo whether there is substantial evidence to support the verdict and whether the moving party is entitled to judgment in its favor as a matter of law. (*Ibid.*)

### *Future Medical Damages*

A plaintiff is entitled to recover the reasonable cost of necessary medical care, including future expenses. (6 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 1670.) Whether future medical care is reasonably certain to occur is a question of fact for the jury. (*Ostertag v. Bethlehem Shipbuilding Corp.* (1944) 65 Cal.App.2d 795, 805-806, 807.) To establish reasonable certainty, it is not necessary that a physician testify that he

5

or she is reasonably certain the plaintiff will be disabled in the future. There need only be evidence that plaintiff's future disability is reasonably certain. That the amount of future damages may be difficult to measure or subject to various possible contingencies, does not bar recovery. (*Garcia v. Duro Dyne Corp.* (2007) 156 Cal.App.4th 92, 97-98 (*Garcia*).)

In this case, Lonn-Nichols's testimony that she continued to have headaches and neck pain and Drs. Casey and Levin's testimonies that her headaches and neck pain were chronic and were not going to resolve on their own constituted substantial evidence that she was reasonably certain to require future medical care to address the harm resulting from the collision.

*Amount*

The fact of damage must be clearly established but the amount need not be proved with the same degree of certainty. The amount may be left to reasonable approximation or inference because a future damages award is based on probabilities. (6 Witkin, Summary of Cal. Law, *supra*, Torts, § 1551.) Nevertheless, the evidence must show a degree of probability that amounts to a reasonable certainty that prospective damages will result from the original injury. (*Behr v. Redmond* (2011) 193 Cal.App.4th 517, 533 (*Behr*).)

Generally, the physician who testifies that future medical care is necessary offers an opinion as to the probable costs. Normally, future medical expenses are a subject that is sufficiently beyond common experience that expert opinion is useful to assist the trier of fact. (Evid. Code, § 801; Haning et al., Cal. Practice Guide: Personal Injury (The Rutter Group 2013) ¶ 3:62 (rev. # 1, 2013).) In this case, Dr. Casey, who recommended the trigger point injections, had no opinion as to their cost. Four cases are instructive in resolving this appeal.

*Niles v. City of San Rafael* (1974) 42 Cal.App.3d 230 (*Niles*) illustrates very specific evidence of future medical expenses. There, an 11-year-old plaintiff suffered

6

permanent paralysis as a result of medical error. The plaintiffs presented detailed evidence to support the damages they claimed and the jury awarded about $2 million for future medical expenses. (*Id*. at pp. 237, 241.) The appellate court rejected defendants' substantial evidence challenge to the award. The award was supported amply by evidence that monthly visits to a pediatrician or family physician and yearly visits to an orthopedist for examinations would cost $350 per year, two visits per year to a physiatrist and one annual visit to a urologist would be $100 per year, four visits to a psychiatrist would cost $200 per year, physical therapy would cost $60 a week, dental care necessary to correct overgrowth of the gums caused by drugs used to control epilepsy would cost $100 per year, and regular medical tests and X-rays would cost $245 per year. The total cost for the expected 56 years remaining in plaintiff's life was derived by using an increase factor of 6 percent for physicians' services and 4 1/2 percent for laboratory tests and X-rays, discounted by 5 percent. (*Id.* at p. 242.) In addition, medical supplies and equipment would cost a total of $41,637. (*Ibid.*) The award also included a $50,000 fund to protect plaintiff against medical emergencies and $1,299,637 for round-the-clock attendant care for the rest of his expected life. (*Id.* at pp. 242-243.)

*Garcia, supra,* 156 Cal.App.4th 92, illustrates less specific, but still sufficient, evidence of future medical expenses. There, the plaintiff had been treated for mesothelioma and was in remission at the time of trial. (*Id.* at p. 98.) Nevertheless, the jury awarded him $200,000 for future medical expenses. (*Id.* at p. 95.) The appellate court rejected defendant's challenge to the future damages award. While the evidence was conflicting, there was substantial evidence that plaintiff's mesothelioma was reasonably certain to recur. (*Id.* at p. 98.) Plaintiff's oncologist confirmed the likelihood that further chemotherapy would be necessary and described the expenses involved in monitoring plaintiff before any recurrence occurred. In addition, an expert estimated total future expenses of $150,000 to $200,000, which included ICU (intensive care unit) treatment at $4,000 to $15,000 per day, and $11,500 for one dose of chemotherapy.

(*Ibid.*) In affirming the award, the court stated that the plaintiff was not required to prove with certainty the extent of the harm he had suffered as a result of the defendant's conduct. Although it was desirable that the amount of damage be as definite as reasonably possible, an injured person should not be deprived of substantial compensation merely because he cannot prove with complete certainty the extent of harm he has suffered. (*Id.* at p. 99.) Therefore, even though no expert could state a precise date of recurrence or a precise amount of future damages, the evidence was sufficient for the jury to approximate the future expenses. (*Ibid.*)

In contrast, in *Behr, supra,* 193 Cal.App.4th 517, the court found the evidence of future medical expenses insufficient to support the jury's award. There, defendant negligently transferred genital herpes to plaintiff. The jury awarded plaintiff $3,600 for past medical expenses and $2.5 million for future medical care. (*Id.* at p. 524.) On appeal, the court concluded the future medical care award was not supported by substantial evidence. First, there was no evidence plaintiff would need any future medical care other than herpes medication. To the extent the jury's award was based on plaintiff's uninsurability, it was unsupported by any evidence. (*Id.* at p. 534.) Second, plaintiff testified she was taking medication to control the herpes. According to the medical expert, the medication suppressed the herpes virus and plaintiff had not had an outbreak of the disease while taking the medication. A one-month supply of the drug cost $200 and plaintiff was 56 years old at the time of trial. Plaintiff testified her mother was 95 years old and plaintiff's counsel argued plaintiff had "a good 35 years left." The court held that plaintiff's testimony was insufficient to support a determination of her life expectancy given that the life expectancy table included in the CACI jury instructions indicated a life expectancy of 27.4 years. (*Ibid.*) The court concluded the only substantial evidence that supported damages for future medical expenses was the evidence of the cost of the medication over plaintiff's expected lifespan. That amount

was no more than the $72,000 urged by defendant. The court modified the judgment and reduced the award accordingly. (*Id.* at p. 535.)

Likewise in *Scognamillo v. Herrick* (2003) 106 Cal.App.4th 1139, the plaintiff's physician testified that the plaintiff would require back surgery as the result of the accident, first on one disc, and possibly on a second disc. The trial court awarded the plaintiff damages, including the costs of two future surgeries and future lost wages. (*Id.* at pp. 1145-1146.) The appellate court concluded there was no substantial evidence to support the future damages awarded for a possible second back surgery because the prospect of a second surgery was too speculative to justify damages. From the expert's testimony: "'the usual procedure is to do the worst disc first and see, because of the risk of the surgery, see *how much improvement there is*. And *if everything goes well, then perhaps, if everything goes well, proceed with the second disc*,'" (*id.* at p. 1151) it appeared possible that one surgery might sufficiently alleviate the plaintiff's problems, or that a second surgery might be deemed to not be worth the risk. Absent any other evidence as support for the award of damages arising out of a second surgery, there was insufficient evidence, based on a reasonable medical probability, to make such an award. The judgment was reversed as to the medical expenses awarded for the second surgery. (*Ibid.*)

*Analysis*

The jury was instructed that Lonn-Nichols did not have to prove the exact amount of damages that would provide reasonable compensation for the harm she experienced, but they were not to guess or speculate in awarding damages. "To recover damages for future medical expenses, … Lonn-Nichols must prove the reasonable costs of reasonably necessary medical care that she is reasonably certain to need in the future."

Lonn-Nichols contends the court used an improper standard when reviewing the evidence and granting the motion. She submits the court disregarded the following evidence, which constituted substantial evidence to support the jury's $49,500 future

9

medical expenses award:  her testimony that she anticipated future medical bills because she continued to get a monthly torodol shot from Dr. Knapp and would continue treatment from Drs. Ma and Levin and whomever else Dr. Knapp referred her to.  She had paid Dr. Knapp's office $694.69 for past medical expenses related to her injuries.  In addition, Dr. Knapp had referred her for physical therapy and to Drs. Levin and Ma.  She had paid $800.61 for the physical therapy, $281.46 to Dr. Levin for treatment, and $932.23 to Dr. Ma, who was then treating her.

She contends the future damages award was also supported by testimony from Drs. Casey and Levin.  Dr. Casey testified that he did not feel she was probably going to get better.  Studies had shown that after injuries of "this sort," 80 percent of patients recovered by a year or two.  The others continued to have symptoms forever.  He had recommended trigger point injections around her cervical spine to help her headaches.  Epidural steroid injections were also an option to try.  Dr. Levin testified he did not believe Lonn-Nichols's disc protrusion was going to resolve on its own.  Treatment options included physical therapy, pain management, and possibly surgery.

The trial court did not disregard relevant evidence or apply an improper standard.  While the evidence Lonn-Nichols cites is sufficient to support a finding that she will require future medical care, there was no evidence to support the $49,500 amount the jury awarded.  Unlike in *Niles*, *supra*, 42 Cal.App.3d 230; *Garcia*, *supra*, 156 Cal.App.4th 92, and *Behr*, *supra*, 193 Cal.App.4th 517, where there was expert opinion testimony regarding the cost of specific future medical care, in this case there was no testimony regarding the costs of any specific future care including the trigger point injections Dr. Casey recommended or the torodol injections Lonn-Nichols testified she received from Dr. Knapp.

Lonn-Nichols also contends the award is supported by evidence of past expenses from which the jury could reasonably infer potential long-term costs.  We disagree.  Regarding past medical expenses, there was evidence of the total amount Lonn-Nichols

10

had paid to Dr. Knapp, to Dr. Levin and to Dr. Ma. There was also evidence of the total amount paid for 11 or 12 physical therapy sessions. Regarding future medical expenses, Dr. Levin testified that future treatment options might include physical therapy, pain management and possibly surgery, but offered no opinion as to the potential costs of those treatments. Dr. Casey recommended Lonn-Nichols receive trigger point injections and, if they no longer worked, epidural steroid injections. He did not know what the injections cost. And, Lonn-Nichols testified she would need treatment and monthly shots from Dr. Knapp, but she was not asked about their potential costs. While the evidence showed Lonn-Nichols had paid Dr. Knapp $694 for treatment to date, the total amount was not broken down to indicate what amount was paid for "shots." As a result, there was no specific evidence of past medical expenses from which the jury could extrapolate potential future costs as was the case in *Behr* where there was evidence the medication costs $200 per month.

Because there was no evidence of the cost of the trigger point injections--past or future--or of the future cost of any other recommended treatment, the jury could only have speculated as to their cost to determine the amount awarded.

## DISPOSITION

The judgment and the order granting Brugger's motion for JNOV are affirmed. Costs on appeal are awarded to Brugger.

11