[No. A117760. First Dist., Div. Two. Oct. 15, 2008.]

OMOTAYO FASUYI, Plaintiff and Respondent, v.
PERMATEX, INC., Defendant and Appellant.

**COUNSEL**

Poole & Shaffery, John Shaffery, Karl Kime and Rey S. Yang for Defendant and Appellant.

Hooy & Hooy and Robert J. Hooy for Plaintiff and Respondent.

**OPINION**

**RICHMAN, J.**—The law favors resolution of cases on their merits, and because it does, any doubts about whether Code of Civil Procedure section 473[1] relief should be granted " 'must be resolved in favor of the party seeking relief from default [citations]. Therefore, a trial court order denying relief is scrutinized more carefully than an order permitting trial on the merits.' [Citations.]" (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 980 [35 Cal.Rptr.2d 669, 884 P.2d 126] (*Rappleyea*).) Justice Mosk began *Rappleyea* with a succinct statement of the question before the Supreme Court and its answer: "The question is whether a default must be set aside and a default judgment reversed on the ground of abuse of discretion. We conclude that they must be . . . ." (8 Cal.4th at p. 978.) The question before us is the same. And so is our answer.

In August 2004, Omotayo Fasuyi was working at his place of employment when a brake-cleaning product manufactured by Permatex, Inc., dripped on him. In August 2006, some three weeks before the statute of limitations would expire, Fasuyi filed a complaint for personal injuries against Permatex. Fasuyi's counsel was having difficulty effecting service, and made contact with the legal department at Illinois Tool Works, Inc. (ITW), the parent company of Permatex, which advised him how to serve the complaint, including providing the address of its agent for service. Service was finally effected on December 4, 2006—beyond the time set forth in the California Rules of Court and the case management order issued by the superior court.

A paralegal at ITW promptly forwarded the summons and complaint to ITW's insurance broker, which promptly forwarded it to the appropriate insurers, which acknowledged receipt. Despite that, no response to the complaint was filed. Shortly after a response was due, Fasuyi's counsel filed a request for default, filed without any communication with anyone at ITW or anyone else. Thirteen days later, Fasuyi obtained a default judgment for $236,500, against a background that can only be described as unusual. When Permatex learned of the default judgment, it quickly retained counsel, who requested Fasuyi's counsel to voluntarily set it aside. He refused. On March 23, 2007, 15 days after it learned of the judgment, Permatex filed a motion for relief from default. The motion was denied without explanation, in a four-word order.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

As we explain, the default judgment should probably never have been granted in the first place, which is bad enough. Worse, the trial court denied Permatex's motion for relief, this in the face of a record demonstrating that Permatex was not derelict. Such denial was a manifest abuse of discretion—and prejudicial to Permatex. We thus reverse.

## BACKGROUND

### The Facts

Permatex, which manufactures a "Brake & Parts Cleaner," is a wholly owned subsidiary of ITW, a diversified manufacturer of advanced industrial technology. ITW is an international business corporation with 825 decentralized business units located in 52 countries, and employs approximately 60,000 people. (<http://www.itw.com> [as of Oct. 15, 2008].) Fasuyi's counsel described it at oral argument as number "175 in the Fortune 500."

On or about August 25, 2004, while employed as a mechanic in Oakland, Fasuyi was underneath a vehicle performing repairs when the brake cleaner dripped onto his forehead and left hand. Fasuyi, an African-American, claimed that this caused him to develop patches of hypopigmentation, a whitening of his skin, requiring medical treatment and subjecting him to ridicule. On August 1, 2006, Fasuyi filed a complaint in Alameda County Superior Court against Permatex, seeking damages for his physical and emotional injuries, under theories of strict products liability, failure to warn, breach of warranty, and negligence.

Counsel for Fasuyi was having difficulty serving the complaint. As he explained it: "Before defendant was served in December, I had multiple contacts with the legal department at [ITW] about plaintiff's case. My process server had attempted to serve plaintiff's complaint and related materials on CT Corporation Systems (CT Corp.), which refused to accept them. During one of my calls and after I explained who I was and the purpose of my call (to arrange for service of plaintiff's complaint), a representative of [ITW] confirmed that CT Corp. was the defendant's agent and confirmed the agent's address."[2]

As set forth in the original "Affidavit of Service" executed by Christine Foran, on December 4, 2006, Ms. Foran served a copy of "the Summons and Complaint for Damages," "c/o CT Corporation, One Commercial Plaza, Harford, CT." The affidavit of service did not indicate that a statement of damages was also served.

---

[2] Counsel's declaration was not included in the clerk's transcript, but was attached to the respondent's brief. Accordingly, through the court's own motion and pursuant to California Rules of Court, rule 8.155, we deem the record augmented to include it.

Elizabeth Ahlman, a paralegal at ITW, testified that CT Corporation "forwarded the Summons and Complaint to [ITW]"; and that "on or about December 12, 2006, [ITW] forwarded the summons and complaint to Permatex's insurance broker, Marsh USA," requesting it to in turn forward the documents to Permatex's insurance carriers with instructions to provide a defense to the lawsuit on behalf of Permatex. Ms. Ahlman "believed that Permatex's insurance carriers would retain counsel to respond to the Complaint in a timely fashion."

Jacqueline Sbarbono, as associate consultant for Marsh, confirmed that "on December 12, 2006, Marsh received the summons and complaint . . . from [ITW] with instructions for Marsh to forward the complaint" to the insurers. The next day, December 13, Sbarbono "forwarded the . . . Summons and Complaint to the claims managers at Ohio Casualty Insurance and Crum & Forster, insurers for Permatex, via Overnight Mail." And along with forwarding the summons and complaint, Sbarbono "provided said claims managers with the insured contact information and requested written confirmation of receipt of the Summons and Complaint by noting the insurers' file numbers. [Sbarbono] also instructed the claims managers to contact Permatex directly confirming the same. [¶] [Sbarbono] received said written confirmation and was under the mistaken belief that Permatex's insurers would contact Permatex directly, file an answer to the complaint on Permatex's behalf and undertake Permatex's representation in this matter."

No responsive pleading was filed.

As indicated *ante*, Fasuyi's counsel had been in contact with the legal department at ITW, which had assisted him in effecting service. Despite that, counsel did not contact anyone there—or anyone else—and instead on February 14, 2007, filed a request for entry of default, followed shortly thereafter by a default judgment. It was hardly a model of default judgment procedure, as the detailed description *post* makes clear.

### The Default Proceedings

On February 14, 2007, counsel for Fasuyi filed a request for entry of default against Permatex, along with a request for court judgment, and mailed a copy of the request to Permatex's agent for service of process. The Alameda County Clerk entered the default that day.

The leading practice treatise sets out the documentation required for such default: "**Documentation required:** The application for entry of default normally consists of the following documents: [¶] Request to Enter Default form, including a *declaration of mailing* copies to defendant and

defendant's counsel if known . . . ; [¶] Proof of service of summons (if the original summons has not already been returned with proof of service) or of notice of order fixing time for further response (e.g., after demurrer overruled); [¶] In superior court *injury* or *death* actions, where the damage amount is not alleged in the complaint, a CCP §425.11 statement of damages and proof of service thereof . . . ." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2008) ¶ 5:73, p. 5-19 (rev. # 1, 2008).)[3]

Fasuyi's request for default was on the required mandatory form (Judicial Council form CIV-100), though the section labeled "[j]udgment to be entered" was blank. There is no indication in the record that the request was accompanied by *any* statement of damages, let alone on the *mandatory* form adopted by the Judicial Council. (See Judicial Council form CIV-050 [Statement of Damages (Personal Injury or Wrongful Death)].) And as will be seen, the statement of damages Fasuyi's counsel would later claim was in fact served was not on the mandatory form.

On February 28, 2007, the matter came on for what the minutes say was a "court trial." The minute order provides in its entirety as follows:

"Cause called for Court Trial on February 28, 2007.

"Plaintiff Omotayo Fasuyi appearing represented by Hooy, Robert J.

"Defendant Permatex, Inc. not appearing.

"9:35 AM—Omotayo Fasuyi sworn for Plaintiff as a witness and under Direct Examination.

"This cause came on for hearing this day at the request of plaintiff.

"The defendant(s) hereinafter named having been personally served with summons and copy of complaint, having failed to appear and answer the complaint within the time allowed by law and in said summons specified, and

---

[3] Section 425.11 provides in relevant part as follows:

"(b) When a complaint is filed in an action to recover damages for personal injury or wrongful death, the defendant may at any time request a statement setting forth the nature and amount of damages being sought. . . .

"(c) If no request is made for the statement referred to in subdivision (b), the plaintiff shall serve the statement on the defendant before a default may be taken.

"(d) The statement referred to in subdivision (b) shall be served in the following manner:

"(1) If a party has not appeared in the action, the statement shall be served in the same manner as a summons."

the default of said defendant(s) having been entered: Judgment was entered on 2/28/07 as: Judgment for Plaintiff.

"Plaintiff submitted proposed Judgment for signature of Court."

Of course, the proceeding was not a court trial. It was default prove-up hearing. (See *Merrifield v. Edmonds* (1983) 146 Cal.App.3d 336, 341 [194 Cal.Rptr. 104] [explaining distinction between default judgment and "uncontested" § 594 proceeding in that case].) But more to the point involved here, there is no indication anywhere in the record that the court had before it at that time any statement of damages. Certainly the minute order does not refer to one.

That same day a "Judgment" was signed, and also a "Default Judgment (Court)" which concluded as follows: "It is hereby ordered, adjudged and decreed that: [¶] 1. Plaintiff Omotayo recover $236,500.00 against defendant Permatex, Inc., together with costs of suit of $505.00, with interest at the rate of ten percent (10%) per annum until paid."

As noted, there is no indication that on February 28 the court had before it any statement of damages. And absolutely clear in the record is that there was no *proof of service* on Permatex of such statement of damages, a statutory prerequisite before any default judgment can be entered. As to this, the declaration of Fasuyi's counsel later filed in opposition to Permatex's motion represented that the "judgment was entered subject to plaintiff later submitting an amended proof of service of plaintiff's statement of damages on or about December 4, 2006. Plaintiff has obtained this amended proof of service and filed the same and plaintiff's statement of damages with the court along with this opposition." This second proof of service will be discussed *post*.

### The Motion to Set Aside

According to paralegal Ahlman, ITW learned of the default judgment on March 7, 2007. That same day Ahlman contacted the firm of Poole & Shaffery, LLP, and retained it to represent Permatex. On March 8, 2007, Rey Yang at that firm called Fasuyi's counsel requesting that he voluntarily lift the default. Counsel refused, and Mr. Yang followed up that same day with a letter, pointing out that the judgment was invalid due to the statement of damages issue and again requesting voluntary relief from the judgment. The record reflects no response from Fasuyi's counsel.

On March 23, 2007, Poole & Shaffery filed its motion to set aside and "for leave to defend itself" in the action. The motion was supported by the declaration of paralegal Ahlman, setting forth the history of the tender of

defense discussed *ante*, and the declaration of Attorney John Shaffery; it was also accompanied by the required proposed answer. The motion made two arguments: (1) the default judgment violated due process as protected by section 425.11, as Fasuyi failed to properly serve Permatex with a statement of damages prior to the entry of the default judgment; and (2) Permatex's failure to respond constituted inadvertence or excusable neglect entitling Permatex to relief under section 473, subdivision (b).

On April 12, 2007, Fasuyi filed his opposition. It consisted of a memorandum, objections to evidence,[4] and the declaration of Fasuyi's counsel. As to the statement of damages issue, Fasuyi's opposition asserts this: "In this case, plaintiff served his two-page Statement of Damages on defendant on December 4, 2006, by serving a copy of the same on CT Corp., defendant's agent for service of process. The proof of service, executed under penalty of perjury, is·on file herein. Further defendant acknowledges receipt of a statement of damages, just not a 'complete' one. Interestingly, defendant never produced a copy of the less than 'complete statement of damages' it received, and there is no evidence defendant sought to discover the 'complete' contents of plaintiff's Statement of Damages until defendant's counsel became involved in the matter."

On April 18, Permatex filed its reply memorandum, along with the declarations of Sbarbono and Marla Almazan, an attorney at Poole & Shaffery.

The motion was set for hearing on April 25, 2007, and was apparently argued that day. There is no indication the hearing was reported, and Fasuyi's brief asserts that "no transcript of the hearing was made," a fact confirmed by a call to the Alameda County Clerk.[5]

---

[4] The objections to evidence were never ruled on.

[5] While Fasuyi does not urge the point, many cases hold that the absence of a transcript precludes a determination that the trial court abused its discretion. (See, e.g., *Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, 448 [94 Cal.Rptr.2d 143]; *Wagner v. Wagner* (2008) 162 Cal.App.4th 249, 259 [75 Cal.Rptr.3d 511].) Those cases should not apply here, where the absence of any transcript is not the fault of Permatex.

As to the default proceeding, the lack of transcript was hardly the responsibility of Permatex, as there was nothing it could have done vis-à-vis the prove-up hearing, as it had no right to participate. (*Devlin v. Kearny Mesa AMC/Jeep/Renault, Inc.* (1984) 155 Cal.App.3d 381, 386 [202 Cal.Rptr. 204].)

As to the lack of transcript of the hearing on the motion, Weil and Brown has this to say, in chapter 9, part I, dealing with "Law and Motion": "**Court reporters:** In most (but not all) courts, a court reporter is present at all law and motion hearings. [¶] If the court does not provide a reporter, its local rules must so state and spell out the procedure for obtaining a reporter (see CRC 3.1310). In such cases, parties are entitled to arrange for a reporter at their own expense (fees may be recoverable as court costs). [CRC 2.956(c).]" (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, *supra*, ¶ 9:171, pp. 9(I)-108 to 9(I)-109 (rev. # 1, 2008).) We

On April 27, a minute order was entered which reads in its entirety as follows: "The Motion to Vacate/Set Aside Default and Default Judgment filed for Permatex, Inc. was set for hearing on 4/25/2007 at 9:00 AM in Department 136 before the Honorable Winton McKibben. [¶] The matter was argued and submitted, and good cause appearing therefore, [¶] It is hereby ordered that: [¶] The motion is denied."

On May 9, 2007, Permatex filed a notice of appeal from the February 28, 2007 judgment and the April 27, 2007 order.

## DISCUSSION

### The Role of the Court in Default Judgments

■ It is, of course, the case that there is no opposing party in a default judgment situation. Thus, cases properly recognize that in such situation "it is the duty of the court to act as gatekeeper, ensuring that only the appropriate claims get through." (*Heidary v. Yadollahi* (2002) 99 Cal.App.4th 857, 868 [121 Cal.Rptr.2d 695]; see *Electronic Funds Solutions, LLC v. Murphy* (2005) 134 Cal.App.4th 1161, 1179 [36 Cal.Rptr.3d 663].)

California Judges Benchbook: Civil Proceedings Before Trial (CJER 2d ed. 2008) (Benchbook) is a treatise that "focuses on the judge's role." (Benchbook, *supra*, preface, p. v.) It provides "practical working tools to enable a judge to conduct proceedings fairly, correctly, and efficiently. [It is] written from the judge's point of view, giving the judge concrete advice on what to look for and how to respond." (*Ibid.*)

■ Chapter 16 of the Benchbook deals with defaults and default judgments, and in its second section of advice states that "[a] judge may enter a default judgment against a defendant only if the plaintiff has precisely followed certain procedures that ensure that the defendant received sufficient notice of the pending action to make an informed choice as to whether to defend or ignore the plaintiff's claims. [Citations.] When the plaintiff fails to comply with these procedures, the defendant need not suffer the consequences of a default judgment. [Citation.]" (Benchbook, *supra*, § 16.2, p. 371.) As the Court of Appeal put it in *Lopez v. Fancelli* (1990) 221 Cal.App.3d 1305, 1312 [271 Cal.Rptr. 87], the first case cited in the Benchbook: "The rules pertaining to defaults and default judgments must be precisely followed to ensure that a defaulting defendant is aware of plaintiff's claims." Those rules were not "precisely followed" here. And there apparently was no gatekeeper.

---

have found no such local rule, and from all indications Permatex was not even aware that there was no reporter, as shown, for example, by its designation of record on appeal requesting the transcript of the hearing of the motion.

## The Default Judgment Was Highly Irregular

■ Section 425.11 requires that before any default judgment can be entered in a personal injury case, the plaintiff must serve the defendant with a statement of damages. (§ 425.11, subds. (b), (c).) "Such notice enables a defendant to exercise his right to choose . . . between (1) giving up his right to defend in exchange for the certainty that he cannot be held liable for more than a known amount, and (2) exercising his right to defend at the cost of exposing himself to greater liability." (*Greenup v. Rodman* (1986) 42 Cal.3d 822, 829 [231 Cal.Rptr. 220, 726 P.2d 1295].)

As noted *ante*, there is no indication in the record that on February 28 the court had before it any statement of damages. And absolutely clear in the record—indeed, admitted by Fasuyi—is that there was no *proof of service* on Permatex of such statement of damages, a statutory prerequisite before any default judgment can be entered. Nevertheless the declaration of Fasuyi's counsel represented that the "judgment was entered subject to plaintiff later submitting an amended proof of service of plaintiff's statement of damages . . . [and] Plaintiff has obtained this amended proof of service and filed the same and plaintiff's statement of damages with the court along with this opposition."

Permatex first argues that the trial court failed to properly apply section 425.11 to the facts of this case, asserting that Fasuyi failed to serve it with the complete statement of damages in advance of the default judgment and therefore the court lacked jurisdiction under section 425.11 to enter the judgment.[6] Permatex presented the trial court with evidence that the statement of damages had not been properly served, including an affidavit from Ms. Almazan at Poole & Shaffery stating that the case file she received from Permatex in early March (after entry of the default judgment) did not include the complete statement of damages but only "a single page of an incomplete document entitled 'Statement of Nature and Amount of Damages,' " and that she was "informed that Permatex does not have a complete copy of plaintiff's statement of damages."

On the other hand, in his opposition to Permatex's motion Fasuyi argued that the default judgment was "subject to" a later proof of service, and filed what his counsel called an "amended proof of service," though the word "amended" nowhere appears on it. This second proof of service stated that

---

[6] Permatex also argues that the court improperly entered the default judgment because Fasuyi had not filed a proof of service of the statement of damages with the court when it applied for entry of default. This argument has been rejected. (*Scognamillo v. Herrick* (2003) 106 Cal.App.4th 1139, 1147 [131 Cal.Rptr.2d 393] [failure to file proof of service was "merely an irregularity"].) We see no need to revisit it here.

Ms. Foran served "Permatex on December 4, 2006 with Statement of Damages" along with the "Summons and Complaint, Civil Case Cover Sheet, a Notice of Case Management Conference and Order."[7] What we have, therefore, is a default judgment entered "subject to" later proof, which later proof, it would develop, was a "statement of damages" *not* on the mandatory form, but on a pleading prepared by Fasuyi's counsel. If all that is evidence of "rules . . . [being] precisely followed" (*Lopez v. Fancelli, supra,* 221 Cal.App.3d at p. 1312), it comes in a novel guise.

So, we have a conflict in the "evidence" as to what was in fact served by way of a statement of damages. Permatex says it received only the first page, a page which listed the damages at $31,500. Fasuyi says there was service of the complete statement of damages as claimed in the second proof of service though, Fasuyi would be forced to admit, not on the mandatory form—which, it bears noting, has *all* the damages claimed on the *first page*. That is the record before us. What do we do with it?

Permatex asserts that the trial court exceeded its authority when it allowed Fasuyi to later file an amended proof of service showing that the statement of damages had been served along with the original summons and complaint. Perhaps we should agree, and call the default judgment void. This would preclude any "subject to" default judgments to exist, assuring that all the "i's" are dotted and the "t's" are crossed, as the Benchbook dictates, and thus assuring that all rules are "precisely followed." Or perhaps we should only call the judgment irregular, as some courts have done in analogous circumstances. (See *National Diversified Services, Inc. v. Bernstein* (1985) 168 Cal.App.3d 410, 416 [214 Cal.Rptr. 113] [judgment based on late return of proof of service of complaint]; *Connelly v. Castillo* (1987) 190 Cal.App.3d 1583, 1589 [236 Cal.Rptr. 112] [same].) We conclude we need not decide the question, as we hold that the motion to set aside had to be granted. And that not to grant it was an abuse of discretion.

---

[7] We are constrained to make a few observations about the so-called "amended proof of service":

First, we do not understand any need to file the second proof of service *after* the February 27 hearing, as the second proof of service purports to have been executed on December 13, 2006, over two months *before* the hearing.

Second, if the judgment were in fact "subject to" further proof, why was such proof not forthcoming long before the opposition to Permatex's motion, especially if it had been executed on December 13, 2006?

Third, the original "Affidavit of Service" executed on December 4, 2006, is on what appears to be a nonstandard form, and is executed by Christine Foran, private process server working for a client described as "Wakeman Process Service, Inc." The later "Proof of Service" is on a different form entirely, a Judicial Council form prepared by Fasuyi's counsel. And in it Ms. Foran states that she was apparently associated with Wakeman Process Service, possessed a California registration number (No. 16, issued by Alameda County), and that she is a registered California process server, independent contractor. It was, in a word, unusual.

## The Trial Court Abused Its Discretion in Denying Relief Under Section 473, Subdivision (b)

Section 473, subdivision (b) states that a court "may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect." This part of section 473 is recognized as invoking the trial court's discretion, and the judgment of the trial court " 'shall not be disturbed on appeal absent a clear showing of abuse.' " (*Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 254, 257 [121 Cal.Rptr.2d 187, 47 P.3d 1056].)

■ To obtain discretionary relief under section 473, the moving party must show the requisite mistake, inadvertence, or excusable neglect. (*Bonzer v. City of Huntington Park* (1993) 20 Cal.App.4th 1474, 1478 [25 Cal.Rptr.2d 278], quoting *Iott v. Franklin* (1988) 206 Cal.App.3d 521, 526–528 [253 Cal.Rptr. 635].) Section 473 also requires that the party diligently seek relief "within a reasonable time, in no case exceeding six months, after the judgment, dismissal, order, or proceeding was taken." (§ 473, subd. (b).)

Permatex argues that it is entitled to relief under the discretionary provision because its failure to file a response to the complaint was the result of mistake, inadvertence, or excusable neglect. Permatex demonstrated that paralegal Ahlman promptly forwarded the legal documents to the insurance broker. Permatex also demonstrated that its broker did what it was supposed to do, promptly forwarding the process to the insurers and instructing the claims managers to contact Permatex directly; and that the broker received written confirmation of that, and was under the expectation that the insurer would retain counsel and appear on Permatex's behalf. As Permatex distills it: "[Permatex] knew nothing of the default or default judgment until after receiving service of the latter in the amount of $236,500, plus $505 in costs. Something went awry after transmittal of the complaint to the insurance carrier, but precisely what is not known. This was a classic instance of mistake and inadvertence—but not on the part of [Permatex], which did what all corporations do when served with a complaint: send it to the carrier for handling. Thus . . . there are abundant grounds for reversal under [section 473, subdivision (b)] because of mistake, inadvertence and excusable neglect." We could not agree more.

Twenty years ago we set out the governing principles, in *McCormick v. Board of Supervisors* (1988) 198 Cal.App.3d 352 [243 Cal.Rptr. 617], a case involving a dismissal of a CEQA (California Environmental Quality Act; Pub. Resources Code, § 21000 et seq.) petition for failure to timely request a

hearing. The trial court denied relief sought under section 473. We reversed. After first holding that section 473 relief was available in the CEQA-notice context, we went on:

"The next question is whether the trial court erred in refusing to grant section 473 relief under the facts herein. Our standard of review is well articulated by the California Supreme Court in *Elston* v. *City of Turlock* (1985) 38 Cal.3d 227, 233 [211 Cal.Rptr. 416, 695 P.2d 713]: 'A motion seeking such relief lies within the sound discretion of the trial court, and the trial court's decision will not be overturned absent an abuse of discretion. [Citations.] However, the trial court's discretion is not unlimited and must be " 'exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice.' " [Citations.] [¶] Section 473 is often applied liberally where the party in default moves promptly to seek relief, and the party opposing the motion will not suffer prejudice if relief is granted. [Citations.] In such situations "very slight evidence will be required to justify a court in setting aside the default." [Citations.] [¶] Moreover, because the law strongly favors trial and disposition on the merits, any doubts in applying section 473 must be resolved in favor of the party seeking relief from default [citations]. Therefore, a trial court order denying relief is scrutinized more carefully than an order permitting trial on the merits. [Citations.]' " (*McCormick v. Board of Supervisors, supra,* 198 Cal.App.3d at pp. 359–360.)

Last year we elaborated on the concept of abuse of discretion, in *People v. Jacobs* (2007) 156 Cal.App.4th 728 [67 Cal.Rptr.3d 615]. Holding that there was an abuse of discretion in denying a continuance, we ended our discussion with this observation: "In *Concord Communities v. City of Concord* (2001) 91 Cal.App.4th 1407, 1417 [111 Cal.Rptr.2d 511] our colleagues in Division Four of this court observed that 'Abuse of discretion has at least two components: a factual component . . . and a legal component. [Citation.] This legal component of discretion was best explained long ago in *Bailey v. Taaffe* (1866) 29 Cal. 422, 424: "The discretion intended, however, is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles. It is not a mental discretion, to be exercised *ex gratia*, but a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . ." '

"All this is well described in Witkin where, likewise citing the still vital *Bailey v. Taaffe, supra,* 29 Cal. 422, 424, the author distills the principle as follows: 'Limits of Legal Discretion. [¶] The discretion of a trial judge is not a whimsical, uncontrolled power, but a legal discretion, which is subject to the limitations of legal principles governing the subject of its action, and to

reversal on appeal where no reasonable basis for the action is shown. (See 5 Am.Jur.2d, Appellate Review § 695.) . . .' (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 358, pp. 406–407.)" (*People v. Jacobs, supra,* 156 Cal.4th at pp. 737–738.)

Applying that law here leads inescapably to the conclusion that the trial court abused its discretion here—all legal principles favored Permatex.

■ The most fundamental of those principles is that affirmed in *Au-Yang v. Barton* (1999) 21 Cal.4th 958, 963 [90 Cal.Rptr.2d 227, 987 P.2d 697]: " '[T]he policy of the law is to have every litigated case tried upon its merits, and it looks with disfavor upon a party, who, regardless of the merits of the case, attempts to take advantage of the mistake, surprise, inadvertence, or neglect of his adversary.' " (*Ibid.,* citing among other cases, *Weitz v. Yankosky* (1966) 63 Cal.2d 849, 855 [48 Cal.Rptr. 620, 409 P.2d 700] (*Weitz*).)

"Because the law favors disposing of cases on their merits, 'any doubts in applying section 473 must be resolved in favor of the party seeking relief from default [citations]. Therefore, a trial court order denying relief is scrutinized more carefully than an order permitting trial on the merits.' " (*Rappleyea, supra,* 8 Cal.4th at p. 980, quoting *Elston v. City of Turlock, supra,* 38 Cal.3d at p. 233 (*Elston*).) In Witkin's typically succinct statement of the rule, the remedial relief offered by section 473 is "highly favored and is liberally applied." (8 Witkin, Cal. Procedure, Attack on Judgment in Trial Court, *supra,* § 152, pp. 653–654 and numerous cases there collected.)

As a result of those principles, the Supreme Court has recognized that if a defendant promptly seeks relief (as Permatex did here) and there is no showing of prejudice to Fasuyi (as is the case here), " 'very slight evidence will be required to justify a court in setting aside the default.' " (*Elston, supra,* 38 Cal.3d at p. 233.) Or as *Elston* put it two pages later, "[u]nless inexcusable neglect is clear, the policy favoring trial on the merits prevails." (*Id.* at p. 235.) There was more than slight evidence here. And no inexcusable neglect.

Though admittedly arising in a setting where the trial court set aside the dismissal, *Weitz, supra,* 63 Cal.2d 849, is particularly persuasive. *Weitz* arose out of a car accident in April 1961, which occurred when the defendant, Yankosky, was hit by Weitz's car as the defendant was backing out of his driveway. The defendant reported the accident to his insurance agent, and also filed an SR-1 form with the Department of Motor Vehicles, stating he had automobile liability insurance with Trinity Universal (Trinity). In May 1961, the defendant settled a claim with Weitz's insurance carrier (Allstate) and believed the matter was resolved. It was not.

The next month, June, the plaintiff filed suit against the defendant and served it on him. The defendant immediately mailed the summons and complaint to Trinity at its home office in Dallas. After the defendant mailed the summons and complaint, "he made no inquiry of Trinity as to the status of the case because 'I had thought I had settled with the insurance company [Allstate] and I . . . continued to believe that the insurance carrier had either disposed of the matter or was handling it without contacting [me].' " (*Weitz, supra*, 63 Cal.2d at p. 852.) The defendant's correspondence was never received by Trinity. And no answer was filed. (*Ibid.*)

A request for default was filed in November 1961, and in May 1962, a default judgment obtained. (*Weitz, supra*, 63 Cal.2d at p. 852.) The defendant did not learn of the default judgment until March 1963 (*id.* at p. 853), well beyond the six-month time to seek relief under section 473, subdivision (b). A motion was finally made in August 1963, necessarily directed to the "court's inherent equity power . . . to grant relief . . . where there has been 'extrinsic' fraud or mistake." (63 Cal.2d at p. 855.) The trial court granted the motion. The Supreme Court affirmed, in a unanimous opinion by Justice Peters setting forth the law controlling here:

■ "Where a default is entered because defendant has relied upon a codefendant or other interested party to defend, the question is whether the defendant was reasonably justified under the circumstances in his reliance or whether his neglect to attend to the matter was inexcusable. [Citations.] This rule has been held applicable where an insured relied upon his insurer to defend. (*Pelegrinelli* v. *McCloud River* [*etc.*] *Co.* [(1905)] 1 Cal.App. 593, 594 et seq. [82 P. 695].) [¶] With regard to whether the circumstances warranted reliance by the defendant on a third party, the efforts made by the defendant to obtain a defense by the third party are, of course, relevant. . . . [¶] In the present case defendant acted reasonably in assuming that Trinity would defend and in following the instructions in his insurance policy to mail any summons and complaint to Trinity at Dallas, and the trial court could properly conclude that the failure of these documents to arrive was neither defendant's nor Trinity's fault. There is no showing that plaintiff was in any way prejudiced by defendant's failure to answer on time. Even if the mistake were caused by *some* negligence on defendant's part, this negligence might be excused if it in no way prejudiced the opposing party. [Citations.]" (*Weitz, supra*, 63 Cal.2d at pp. 855–856.)

*Pelegrinelli v. McCloud River etc. Co., supra*, 1 Cal.App. 593, cited in *Weitz*, is likewise persuasive. In June 1900 the defendant lumber mill was threatened with a possible lawsuit for a wrongful death occurring in May, though no lawsuit had yet been filed. The defendant nevertheless went about marshalling evidence, obtaining statements and photographs which it forwarded to its insurer. (*Id.* at p. 595.) In February 1902, a lawsuit was in fact

filed, and the president of the defendant company learned of it on February 7, by reading of it in a newspaper. The lawsuit had not been served. The president "immediately sent for the agent of the insurance company and informed him thereof, and with him went over the case and the matters and facts connected with it and with the defense thereto; and the said agent then and there agreed with the president that the insurance company would appear . . . through its regular attorneys on behalf of the defendant and defend the same . . . . Nothing was said between them with reference to the summons or complaint in the action, or with reference to the service of the same . . ."—which, as noted, had not yet been served. Service was in fact effected on February 10, on the secretary of the defendant company, who immediately delivered the papers to the president, who put them in his drawer, never forwarding them to the insurer. (*Id.* at pp. 595–596.) Default and default judgment were thereafter entered.

The trial court granted relief, and the First Appellate District affirmed, in language strongly supporting Permatex here: "It may be conceded that it would have been an act of prudence on [the president's] part, when he received the copy of the summons and complaint, to have delivered them to the insurance company; but if he had the right to believe and did believe that the insurance company would enter its appearance and defend the action irrespective of any service of the summons, his failure to give the copies to it cannot be held to have been attributable to any carelessness or inattention. *Whatever omission there was must be regarded as an excusable neglect.* 'Section 473 of the Code of Civil Procedure is a remedial provision, and is to be liberally construed so as to dispose of all cases upon their substantial merits and to give to the party claiming in good faith to have a substantial defense to the action an opportunity to present it.' [Citation.]" (*Pelegrinelli v. McCloud River etc. Co., supra,* 1 Cal.App. at pp. 596–597, italics added.)

*Rogalski v. Nabers Cadillac* (1992) 11 Cal.App.4th 816 [14 Cal.Rptr.2d 286] (*Rogalski*) is also compelling. *Rogalski* was a wrongful termination suit against Rogalski's former employers. The defendants were served and contacted their insurance broker, who forwarded the summons and complaint to their insurer. The insurer failed to make a coverage determination or to timely respond to the complaint. Meanwhile, the plaintiff's counsel wrote to the defendants that he would enter defaults if responses were not filed within five days. The insurer then contacted the plaintiff's counsel, stating that it was still investigating coverage and asking for more time to respond; counsel refused, but said that he would not file the default until noon the following day. The next morning the insurer told the defendants that it was denying coverage and would not file a response, without informing the defendants of the noon deadline. (*Id.* at pp. 818–819.)

The defendants immediately retained counsel who promptly contacted the plaintiff's counsel after the default papers were filed. When the plaintiff's counsel refused to stipulate to set aside the defaults, the defendants filed a motion to set them aside. While that motion was pending, a default prove-up hearing was held, and judgment entered against the defendants. The trial judge denied the defendants relief under section 473, finding that the insurer's failure to file a response was not the result of mistake or neglect, but a deliberate decision. (*Rogalski, supra*, 11 Cal.App.4th at p. 820.) The Court of Appeal reversed, in language applicable here:

"Nabers contends it reasonably believed its insurer, Golden Eagle, was handling the matter and would respond to the complaint in a timely fashion. It is uncontroverted that Golden Eagle was aware of the filing deadline and no excuse has been proffered for its failure to file a response. The trial court specifically found the failure to file a response was not the result of Golden Eagle's mistake or neglect but was a deliberate decision made by Golden Eagle. Golden Eagle may well have acted deliberately, indeed reprehensibly, in failing to either file a responsive pleading or give Nabers adequate warning that it would not do so. That does not, however, justify denying relief to this defendant, who was so obviously caught unaware by his insurer's actions. In [so] ruling the trial court failed to consider Naber's excusable neglect in filing a response." (*Rogalski, supra*, 11 Cal.App.4th at p. 820.)

The two insurance company involved cases on which Fasuyi primarily relies are distinguishable. *Scognamillo v. Herrick, supra*, 106 Cal.App.4th 1139, cited by Fasuyi four times, involved a situation where the plaintiff's counsel had at least three conversations with the defendant before filing the request for default. Specifically, on the day he was served the defendant called the plaintiff's counsel, thinking that settlement of a prior action (a subrogation claim) precluded the personal injury suit from proceeding. The plaintiff's counsel said no, and essentially told the defendant to forward the complaint to his insurer, which he did. That call was on March 30. (*Id.* at p. 1144.) On May 7, after a responsive pleading was due, the plaintiff's counsel called the defendant and "told him the time to respond to the complaint had expired" and that the defendant was in default and could have a default judgment entered against him. (*Ibid.*) The defendant said he had sent the matter to his insurer, and the plaintiff's counsel told him to contact the insurer again. On May 31, more than three weeks later, the plaintiff's counsel called again and told the defendant no response had been filed. The defendant repeated that the matter was in the hands of his insurer, and the plaintiff's counsel said he "would be required to enter default judgments against the defendants if he did not receive a response to the complaint immediately." (*Ibid.*) No response came. The plaintiff's counsel thereafter prepared and sent a statement of damages, this on June 4. Still, the plaintiff's counsel waited yet

another month, and finally on July 12 filed a request for default. (*Scognamillo v. Herrick, supra*, 106 Cal.App.4th at p. 1145.)

The Court of Appeal affirmed the trial court's refusal to set aside the default.[8] And properly so, in light of the conduct there, which conduct was such as to cause Presiding Justice Vogel to comment that "a rule requiring only that the insured demonstrate reasonable reliance on its insurer 'would permit the insurer to willfully or recklessly ignore filing deadlines with impunity, shielding itself behind the blamelessness of its insured while it makes a shambles of orderly procedure.' " (*Scognamillo v. Herrick, supra*, 106 Cal.App.4th at p. 1149.) We agree with that sentiment. But it simply does not apply here, where there was no discussion, no warning, no waiting, no nothing.

The second case is *Don v. Cruz* (1982) 131 Cal.App.3d 695 [182 Cal.Rptr. 581], where the court affirmed a refusal to set aside the default, holding that a defendant who "alleges reasonable reliance on an insurance carrier must also establish justification for the inaction of the carrier." (*Id.* at p. 702.) But there is much more to the case than that, as the actual facts as developed at the prove-up hearing make clear.

At the prove-up hearing, the plaintiff's counsel responded to the court's inquiry about whether there was any communication from the defense side, stating as follows: "Yes, we have [had communication], your Honor. This is a case, your Honor, that has a background of an insurance company who has had notice of this case for over eight months and takes the position that they don't have to answer this complaint. I am at this time willing to offer, put on the record, that I will give the defendant in this case a covenant not to execute against him personally in exchange for his rights against his insurance company. This is a case, your Honor, if your Honor wants to get into the background, it involves a conscious disregard of this whole system and that's the background of this case. There is insurance involved and we do not intend in any way to execute against the defendant personally." (*Don v. Cruz, supra*, 131 Cal.App.3d at pp. 706–707.) That is not the situation here.

So, what do we have? We have a legal department at ITW which initially assisted Fasuyi's counsel in effecting service. Once that service was accomplished, the legal department immediately did what any good department would, forwarding the summons and complaint to its insurance broker for

---

[8] Though it did reverse the default judgment for $100,000, as excessive as a matter of law. (*Scognamillo v. Herrick, supra*, 106 Cal.App.4th at p. 1151.)

appropriate handling. The broker also did what any good broker should, and immediately forwarded the complaint on to the appropriate insurers, received back the requested confirmation, and believed that the matter would be tended to.[9] Sadly, it was not.

That is the record here. No lack of cooperation from the defense side. Indeed, the converse. No deception. No duplicitousness. No stonewalling. No evasion. And no disregard of any warning. In fact, no warning.

It will be recalled that Fasuyi's counsel had been in contact with ITW's legal department, which, not coincidentally, had helped counsel effect service by identifying the location of CT Corporation. Notwithstanding that, Fasuyi's counsel took the default without so much as a reminder, let alone a warning, about any responsive pleading. Permatex argues this was "unfair." We agree, as such warning is at the least an *ethical* obligation of counsel, as well described in Weil and Brown, California Practice Guide: Civil Procedure Before Trial, *supra*, ¶¶ 5:68 to 5:71, pp. 5-16 to 5-17 (rev. # 1, 2007):

■ "[5:68] **Ethical Obligation to Warn Opposing Counsel:** If plaintiff's counsel knows the identity of the lawyer representing defendant, he or she owes an ethical obligation to warn before requesting entry of defendant's default. Failure to do so is a *professional discourtesy* to opposing counsel that will not be condoned by the courts: 'The quiet speed of plaintiffs' attorney in seeking a default judgment without the knowledge of defendants' counsel is not to be commended.' [*Smith v. Los Angeles Bookbinders Union No. 63* (1955) 133 CA2d 486, 500 [284 P.2d 194], (disapproved on other grounds in *MacLeod v. Tribune Pub. Co., Inc.* (1959) 52 C2d 536, 551 [343 P.2d 36])]

" 'Even legitimate tactics must sometimes yield to the only goal that justifies the very existence of our judicial system; i.e., the resolution of our citizens' disputes and the administration of justice.' [*Brown v. Presley of So. Calif.* (1989) 213 CA3d 612, 620 . . . , fn. 3 [261 Cal.Rptr. 779]—the notion that ours is a 'dog-eat-dog business' governed by the 'law of the jungle' should be curtailed, not rewarded]

"a. [5:69] **No legal obligation:** The duty to warn opposing counsel is an ethical rather than a legal requirement. As noted by one court, 'While as a matter of professional courtesy counsel should have given notice of the

---

[9] An insurance broker is the representative of the insured. (Ins. Code, § 33; see *Merchants Fire Assurance Corporation v. Lattimore* (9th Cir. 1959) 263 F.2d 232, 240 [knowledge of broker imputed to insured].)

impending default, and we decry this lack of professional courtesy . . . counsel was *under no legal obligation* to do so.' [*Bellm v. Bellia* (1984) 150 CA3d 1036, 1038 [198 Cal.Rptr. 389] (emphasis added)]

"b. [5:70] **Effect of failure to warn:** In the absence of a prior warning of default, courts are inclined to grant CCP §473(b) motions to set aside defaults. [Citations.]

"But in the absence of an 'attorney affidavit of fault' (*see* ¶*5:292 ff.*), such relief is not mandatory; and denial of relief is not necessarily an abuse of discretion. I.e., the failure to warn *does not require* the court to grant relief. [*Bellm v. Bellia,* supra, 150 CA3d at 1038 . . .]

"[5:71] *PRACTICE POINTER:* If you're representing plaintiff, and have had *any* contact with a lawyer representing defendant, don't even *attempt* to get a default entered without first giving such lawyer *written* notice of your intent to request entry of default, and a *reasonable time* within which defendant's pleading must be filed to prevent your doing so."[10]

Finally, Fasuyi would not be prejudiced by the grant of relief from default. Fasuyi's only argument is delay, and there would have been none had his counsel done what he should have. Beyond that, Fasuyi waited almost two years to file his lawsuit, and took four months to serve it, beyond the time allowed.

Perhaps the legal department at ITW should have calendared the matter and pestered the insurer about the time to plead. Perhaps, though that is not our experience of what necessarily occurs in the real world, whether in the world of the Fortune 500 companies or otherwise. But even if ITW should have done that, and did not, the most that can be said of its conduct is what Justice Peters said of the defendant in *Weitz*: "Even if the mistake were caused by *some* negligence on defendant's part, this negligence might be

---

[10] The same policy is set forth in the recently enacted (eff. July 20, 2007) California Attorney Guidelines of Civility and Professionalism, promulgated by the State Bar (guidelines). These guidelines reflect that "attorneys have an obligation to be professional with . . . other parties and counsel, [and] the courts . . . ," which obligation "includes civility, professional integrity, . . . candor . . . and cooperation, all of which are essential to the fair administration of justice and conflict resolution." (Guidelines, Introduction, p. 3.) Section 15 of the guidelines deals with "Default," and provides in its entirety as follows: "An attorney should not take the default of an opposing party known to be represented by counsel without giving the party advance warning. [¶] For example an attorney should not race opposing counsel to the courthouse to knowingly enter a default before a responsive pleading can be filed. This guideline is intended to apply only to taking a default when there is a failure to timely respond to complaints, cross-complaints, and amended pleadings." (Guidelines, p. 12.)

excused if it in no way prejudiced the opposing party." (*Weitz, supra,* 63 Cal.2d at p. 856.)[11]

So what are we left with to support denial of the motion to set aside? To allow us to conclude discretion was not abused? We have nothing save the principle of appellate review that we do what we can to affirm what was done below—which we will have to do, it must be recalled, without explanation and without analysis. (See *Moran v. Oso Valley Greenbelt Assn.* (2001) 92 Cal.App.4th 156, 160–161 [111 Cal.Rptr.2d 636] [absent explanation or reasoning in trial court's order, appellate court "cannot conclude . . . court's decision had any reasonable basis"].) At the end, therefore, we are left with only one principle that could possibly support affirmance here, the principle of appellate review to seek to uphold the trial court's determination.

That principle, of course, directly conflicts with the principle of trial on the merits. How, therefore, do we resolve that conflict? Witkin has the answer: "Where the lower court denies relief, the two basic principles [citation] may come into conflict; i.e., the tendency to uphold the trial court's determination and the tendency to permit a trial on the merits. [¶] In borderline cases, the second principle has the greater weight, and, accordingly, the lower court's order denying relief is often reversed. . . . (See *Waite v. Southern Pac. Co.* (1923) 192 C. 467, 470 [221 P. 204] ['any doubts which may exist should be resolved in favor of the application, to the end of securing a trial upon the merits']; [citations].)" (8 Witkin, Cal. Procedure, *supra,* Attack on Judgment in Trial Court, § 193, p. 699.)

## DISPOSITION

 We do not mean to suggest, and certainly do not hold, that a defendant who has properly involved the insurer and nevertheless ends up in default is always entitled to relief. Nor do we hold that a plaintiff's attorney must warn a defendant's attorney before taking a default. We recognize that each situation is sui generis and must be analyzed accordingly. What we hold—and it is all we hold—is that the totality of the circumstances here demonstrated that Permatex was entitled to relief from the default and default judgment. And that not to grant that relief was an abuse of discretion, an abuse that was prejudicial to Permatex. (Cal. Const., art. VI, § 13; Code Civ. Proc., § 475.)

---

[11] Permatex did not argue below, nor does it here, that it was entitled to mandatory relief under section 473, subdivision (b) on the grounds of attorney mistake. Thus we need not address the significance of the involvement of paralegal Ahlman, and whether she is within the ambit of section 473, subdivision (b). (See *Hu v. Fang* (2002) 104 Cal.App.4th 61, 64 [127 Cal.Rptr.2d 756] [mandatory relief when mistake by paralegal].)

The judgment and the order are reversed, with instructions that the trial court vacate the default and allow Permatex to file a responsive pleading.

Kline, P. J., and Haerle, J., concurred.

A petition for a rehearing was denied November 13, 2008, and respondent's petition for review by the Supreme Court was denied January 14, 2009, S168530. George, C. J., did not participate therein. Kennard, J., and Chin, J., were of the opinion that the petition should be granted.