Filed 5/20/25  Wiegardt v. Cutting Edge Homes CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| ANDREW WIEGARDT et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>CUTTING EDGE HOMES, INC.,<br><br>    Defendant and Respondent. | D084239<br><br><br>(Super. Ct. No. 37-2023-00020675-CU-BC-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Marcella O. McLaughlin, Judge.  Affirmed.

Joe J. Villaseñor for Plaintiffs and Appellants.

Miltner & Menck, William L. Miltner and Walter E. Menck for Defendant and Respondent.

Plaintiffs Andrew and Jane Wiegardt (Wiegardts) appeal from an order granting defendant Cutting Edge Homes, Inc. (Cutting Edge) relief from default on their complaint for breach of contract and other related claims. They assert the trial court erred by granting mandatory relief under Code of Civil Procedure section 473, subdivision (b),[1] despite the original motion

---

[1]    Further unspecified statutory references are to the Code of Civil Procedure.

requesting only discretionary relief, and because the declaration provided by Cutting Edge's attorney did not adequately acknowledge fault. We conclude there was adequate notice of Cutting Edge's request for mandatory relief, and the attorney declaration was sufficient to meet the statutory requirements for such relief. Accordingly, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Wiegardts filed a complaint against Cutting Edge for breach of contract and other related claims, on May 15, 2023. In the complaint, the Wiegardts asserted Cutting Edge refused to return a deposit they paid on a factory-built home, despite the subsequent discovery that it would be impossible to deliver the home to the intended site.

The Wiegardts served the summons on an authorized agent for Cutting Edge on August 1, 2023. The answer, or other responsive pleading, was due on September 10, 2023.

On or about August 22, 2023, attorney William L. Miltner contacted the Wiegardts' attorney, Joe J. Villaseñor, and explained that he was in discussions to represent Cutting Edge in the litigation. Villaseñor offered Miltner a two-week extension to respond to the complaint.

On November 9, 2023, Miltner contacted Villaseñor again and confirmed that he was representing Cutting Edge. Miltner said he was "exploring" potential arbitration proceedings, and that Cutting Edge would file a responsive pleading by November 17, 2023.

The underlying contract contained a provision stating any claim not settled after mediation "shall be settled by arbitration administered by the Better Business Bureau." Miltner and Villaseñor discussed a potential stipulation regarding arbitration, but they were not certain the Better Business Bureau would administer an arbitration.

2

In the meantime, Villaseñor continued to remind Miltner that a responsive pleading was overdue.  On November 29, 2023, Villaseñor stated, in an e-mail to Miltner, "I expect you to file either [an answer or a stipulation regarding arbitration] no later than close of business tomorrow to avoid your client's default."

Cutting Edge did not file a responsive pleading the next day, and Villaseñor filed a request for entry of default that evening, November 30, 2023.  Miltner contacted Villaseñor about the proposed stipulation on December 1, 2023, and Villaseñor informed him that he had submitted the request for default.  By December 6, 2023, the trial court had entered default judgment, effective November 30, 2023.

On January 9, 2024, Cutting Edge filed a notice of motion and request for relief from the default pursuant to section 473, subdivision (b).  Cutting Edge asserted it was "entitled to relief because the entry of default was taken through mistake, surprise or excusable neglect."  In an associated declaration, attorney Miltner said he believed there was an implied agreement to proceed with arbitration, and that he was "surprised to learn that Mr. Villaseñor had requested default."  Miltner omitted the November 29, 2023 e-mail from Villaseñor referencing a potential default.

In response, the Wiegardts asserted 1) Villaseñor had not agreed to an arbitration stipulation; 2) Miltner was aware of Villaseñor's intent to seek default, at least as of the November 29, 2023 e-mail; and 3) Cutting Edge's failure to file a responsive pleading therefore amounted to *inexcusable* neglect.  Villaseñor provided a supporting declaration and a copy of the November 29, 2023 e-mail.

Cutting Edge shifted its position in response to these arguments in its reply brief and asserted it was seeking relief under both the discretionary

3

and mandatory provisions of section 473, subdivision (b).  It argued, "relief is mandatory where counsel confirm[s] that any act or omission, careless or deliberate, which led to the entry of default was done without clients' knowing participation."  In a supplemental declaration, Miltner said his client, Cutting Edge, was unaware of the potential for default.  He said he told Cutting Edge the matter would likely go to arbitration and reiterated that he was "surprised" to learn Villaseñor filed for default while they were actively negotiating the stipulation.

The trial court issued a tentative ruling indicating it would grant Cutting Edge's request for mandatory relief under section 473, subdivision (b).  The Wiegardts objected and asserted Cutting Edge had not requested mandatory relief in the original motion.  The trial court noted the concern as to notice, continued the hearing, and allowed the Wiegardts to submit supplemental briefing.  After additional briefing and argument, the trial court granted Cutting Edge's request for mandatory relief under section 473, subdivision (b).

The Wiegardts filed a timely notice of appeal.

## II.    DISCUSSION

The Wiegardts assert the trial court erred by granting Cutting Edge's request for mandatory relief because the original noticed motion sought only discretionary relief.  To the extent we reject this argument, the Wiegardts assert the trial court erred because Miltner's attorney declaration was not sufficient to meet the requirements for mandatory relief.

### A.    Relief From Default Under Section 473, Subdivision (b)

"Section 473, subdivision (b) provides for two distinct types of relief— commonly differentiated as 'discretionary' and 'mandatory'—from certain

4

prior actions or proceedings in the trial court." (*Luri v. Greenwald* (2003) 107 Cal.App.4th 1119, 1124 (*Luri*).)

First, section 473, subdivision (b) provides, in relevant part: "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect." This provision is purely discretionary. (*Fasuyi v. Permatex, Inc.* (2008) 167 Cal.App.4th 681, 694 ["This part of section 473 is recognized as invoking the trial court's discretion, and the judgment of the trial court ' "shall not be disturbed on appeal absent a clear showing of abuse." ' "].) However, "[t]o obtain discretionary relief under section 473, the moving party must show the requisite mistake, inadvertence, or excusable neglect." (*Fasuyi,* at p. 694.)

Second, section 473, subdivision (b) also provides: "Notwithstanding any other requirements of this section, the court shall, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default . . . , or (2) resulting default judgment . . . unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect." This provision was added to the statute in 1992 and provides mandatory relief under the stated conditions. (See *Martin Potts & Associates, Inc. v. Corsair, LLC* (2016) 244 Cal.App.4th 432, 437−438 (*Martin Potts*).) The mandatory provision is both narrower, as it applies only to defaults and dismissals, and broader, as it provides relief for an attorney's inexcusable neglect. (*Id.* at p. 438.) If the court grants relief under the mandatory provision, the trial court must also

"direct the attorney to pay reasonable compensatory legal fees and costs." (§ 473, subd. (b).)

"Section 473 is often applied liberally where the party in default moves promptly to seek relief." (*Elston v. City of Turlock* (1985) 38 Cal.3d 227, 233.) And, "because the law strongly favors trial and disposition on the merits, any doubts in applying section 473 must be resolved in favor of the party seeking relief from default." (*Ibid.*) "Therefore, a trial court order denying relief is scrutinized more carefully than an order permitting trial on the merits." (*Ibid.*; accord, *Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 258 ["Where the mistake is excusable and the party seeking relief has been diligent, courts have often granted relief pursuant to the discretionary relief provision of section 473 if no prejudice to the opposing party will ensue."]; *Ramos v. Homeward Residential, Inc.* (2014) 223 Cal.App.4th 1434, 1444 [policy of the law favors a hearing on the merits].)

## B. The Trial Court Did Not Err by Considering the Mandatory Relief Provision

Relying on *Luri*, the Wiegardts argue the trial court erred by granting mandatory relief despite the original motion seeking only discretionary relief. We are not persuaded.

Luri sought relief from a judgment entered following a grant of summary judgment, after her attorney failed to timely file a response or appear at the hearing. (*Luri, supra,* 107 Cal.App.4th at p. 1121.) Luri did not request mandatory relief, but did attach an attorney declaration. (*Ibid.*) The trial court denied the request and, on appeal, Luri noted that she did provide an attorney declaration, and asserted the trial court erred by failing to grant mandatory relief despite the fact that she did not expressly request such relief. (*Ibid.*) The appellate court rejected that argument, finding no "legal grounds to impose a duty upon trial courts to evaluate, *sua sponte,*

6

alternative bases for relief other than those asserted by the moving party." (*Id*. at p. 1125, italics added.)

Here, as the Wiegardts correctly argue, Cutting Edge did focus on discretionary relief under section 473, subdivision (b), in its initial briefing. Cutting Edge asserted the trial court "may" grant relief based on "mistake, inadvertence, surprise or *excusable* neglect," and that it had "wide discretion" in evaluating the request. (Italics added.) However, in developing the argument, Cutting Edge relied specifically on attorney Miltner's alleged surprise at the default filing. It asserted Miltner and Villaseñor were actively discussing the arbitration stipulation, and although Villaseñor "previously threatened to enter default during negotiations," Miltner did not expect him to do so on November 30, 2023. Miltner was thus unaware and "justifiably surprised" to learn that Villaseñor had obtained the default judgment.

The Wiegardts responded by asserting Miltner was aware of the deadline to file a responsive pleading, and that his refusal to do so was not excusable. Accordingly, they asserted Cutting Edge was not entitled to discretionary relief. Responding directly to this assertion, in their reply brief, Cutting Edge stated it was moving "for relief on both grounds set forth in [section 473, subdivision (b)]."

Unlike Luri, Cutting Edge *did* make a request for mandatory relief, on essentially the same grounds it had already argued. (Cf. *Luri, supra,* 107 Cal.App.4th at p. 1125.) The trial court was not "evaluating, sua sponte, alternative bases for relief other than those asserted by the moving party." (*Ibid*.) We acknowledge Cutting Edge did not request mandatory relief in the original motion, but nonetheless, by specifically including the issue in its reply brief, the issue was before the court.

7

Moreover, the Wiegardts and their attorney were fully aware of the underlying factual assertions. The request for mandatory relief was based on essentially the same argument as the prior request for discretionary relief, but with the additional detail that Cutting Edge, the client, was not aware of Miltner's failure to file a responsive pleading. Moreover, Cutting Edge filed its original motion within six weeks of the default, and certainly could have filed a new motion for mandatory relief if the trial court had denied this motion on procedural grounds. We see no reason to force such inefficiency on the trial court where, as here, the court and parties were fully aware of the issues.

The Wiegardts assert further that the sequence of events resulted in "real prejudice," because despite allowing them additional time and briefing to respond to the new request for mandatory relief, the trial court was already "anchored" in its decision to grant that relief. This argument fails to acknowledge the trial court's decision was *mandatory*. The trial court had no choice but to grant the relief if Cutting Edge met the statutory requirements which, as we discuss next, Cutting Edge did. In this context, the sequence of briefing was of minimal importance. Regardless, we presume the trial court understood and followed the law and gave due consideration to the Wiegardts arguments in opposition. The Wiegardts have not demonstrated otherwise.

### C. Miltner's Declaration Was Sufficient

In the alternative, the Wiegardts assert the trial court erred by granting mandatory relief because Miltner did not adequately admit fault.

The mandatory provision of section 473, subdivision (b) requires a party seeking relief to provide "an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect." Here, Cutting Edge's attorney, Miltner, provided two declarations. In the first, he stated "I was

8

surprised to learn that Mr. Villaseñor had requested default." Miltner acknowledged Villaseñor "threatened to enter default during negotiations," but stated he "did not understand that [Mr. Villaseñor] intended to file a request for entry of default while we were negotiating the terms of a stipulation." He explained further that Villaseñor never asserted any reason the arbitration agreement was unenforceable, and that he was "justifiably surprised by Mr. Villaseñor's conduct in seeking the default." In his second declaration, Miltner clarified he was the sole person responsible for communications with Villaseñor, and Cutting Edge did not know about the potential for default before December 6, 2023.

The Wiegardts assert these statements did not meet the statutory requirement of causation because Miltner continued to blame opposing counsel instead of falling on his own sword. They rely on *State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600. As the trial court concluded, that reliance is misplaced. In *State Farm*, the attorney expressly denied the dismissal of his client's claims was the result of his own neglect, and instead maintained that his interpretation of an underlying statute was correct, thereby suggesting his decision as to how to proceed "was an intentional, strategic determination." (*Id*. at p. 609.)

Here, Miltner asserted it was his "surprise" that resulted in the default. He acknowledged Villaseñor had threatened to file the default but essentially admitted he did not take Villaseñor's threats seriously. At the hearing, he explained further, "I made a mistake by not listening to his — not reading his e-mail to be a legitimate threat of filing, taking a default. What I should have done in hindsight, although I would never do this in another case, as the parties were negotiating a stipulation to stay the proceeding and go to binding arbitration, I should have, in an abundance of caution and for the

9

protection of my client, I should have filed a motion to compel arbitration and then negotiated it later. I didn't do that. So that's my error."

Although the statements at the hearing were not part of Miltner's sworn affidavits, they do clarify the statements he made in the affidavits. Miltner was not asserting that the law somehow supported his decision to ignore Villaseñor's threats; rather, he simply stated that he was surprised that Villaseñor followed through on them. That mistake resulted in a default for his client, who was unaware of the threat. It is apparent from the correspondence between the attorneys that this was a contentious relationship. At the same time, the purported deadlines were not always clear, or enforced, and the attorneys were engaged in ongoing discussions concerning the stipulation.[2] Thus, although we agree that Miltner was "attempting to deflect the blame from himself," he was also explaining the reasons for his surprise and the resulting mistake.

In sum, Cutting Edge sought both discretionary and mandatory relief, depending on whether the trial court believed Miltner's "surprise" was excusable. The trial court apparently found it was not excusable but that the resulting mistake was Miltner's fault, not his client's. Accordingly, the court properly granted mandatory relief. (See *Martin Potts, supra,* 244 Cal.App.4th at p. 438 [mandatory relief available for inexcusable neglect].)

---

[2] Because we affirm the trial court's grant of relief based on the mandatory provision of section 437, subdivision (b), we need not address Cutting Edge's alternative argument that it was entitled to relief under the discretionary provision.

10

### III.  DISPOSITION

The order is affirmed.  Respondents are awarded costs on appeal.


KELETY, J.

WE CONCUR:


O'ROURKE, Acting P. J.


DO, J.


11