Filed 9/3/24  Sandoval v. Barajas CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JAMIE SANDOVAL, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> RAMIRO PADILLA BARAJAS, <br><br> Defendant and Respondent. | B326203 <br><br> (Los Angeles County Super. Ct. No. BC691447) |

APPEAL from an order of the Superior Court of Los Angeles County, Upinder S. Kalra, Judge.  Reversed.

Law Offices of Farrah Mirabel and Farrah Mirabel for Plaintiff and Appellant.

Toschi, Collins, Doyle & Houvener and Meredith C. Doyle, for Defendant and Respondent.

_____

Plaintiff and appellant Jamie Sandoval appeals from an order setting aside a default judgment and underlying entry of default he obtained against defendant and respondent Ramiro Padilla Barajas in a lawsuit regarding an automobile collision between the parties.  We conclude the trial court abused its discretion in concluding that Barajas's reasonable reliance on his insurer to address the default was sufficient to establish the diligence case law requires in order to set aside a default on the grounds of extrinsic mistake.  Barajas did not provide any basis on which the trial court could conclude his insurer had been diligent in seeking to address the default once discovered— indeed, the trial court found the insurer had acted unreasonably. Particularly given the substantial prejudice to Sandoval from setting aside a years-old judgment, and the resulting heightened level of diligence Barajas needed to show to justify setting it aside on equitable grounds, the court abused its discretion in granting Barajas's motion to set aside.  Accordingly, we reverse.

**FACTS AND PROCEEDINGS BELOW**

### A.  *Proof of Service of Complaint and Summons*

On January 25, 2018, Sandoval filed suit against Barajas alleging Barajas was at fault in their March 19, 2016 automobile collision in which Barajas's vehicle drove into Sandoval's vehicle.

On March 7, 2018, Sandoval filed a proof of service of the summons and complaint.  A professional process server declared that he had served Barajas by substituted service. Specifically, he declared that he had made four unsuccessful attempts to personally serve Barajas at 15040 Parthenia Street, Apartment 33 in the city of North Hills, Barajas's residence at the time, over the course of a week in February 2018.  The

2

declaration described how, having failed in these attempts, on February 24, 2018 at 10:00 a.m., the process server left the summons and complaint with "Maria 'Doe,' co-occupant (refused last name)" and mailed copies of the documents to Barajas's residence as well. (Capitalization omitted.)

### B.   *Default and Default Judgment*

On May 3, 2018, Sandoval filed a request for entry of default. The request form included a declaration of Sandoval's counsel that, on April 30, 2018, "a copy of [the] request . . . was mailed . . . to . . . [Barajas's] last known address," identified as the Parthenia Street apartment. On May 3, 2018 the court entered default as requested. On August 16, 2018, Sandoval filed a request for default judgment, which the trial court granted and entered on the same day. The court issued an abstract of judgment on March 4, 2019. Sandoval's counsel declared that he mailed it to Barajas at the Parthenia Street apartment, as well as to Barajas's then-current insurance carrier.

### C.   *Motion to Set Aside*

On July 1, 2022, Barajas filed a motion that, in substance, sought to set aside the entry of default and default judgment.[1] He supported his motion with declarations, including his own.

---

[1] Barajas's motion to set aside does not expressly seek to set aside the entry of default. It is instead captioned as a "motion to set aside default judgment and quash service of summons." (Boldface & capitalization omitted.) Both below and on appeal, however, the parties treat the motion as one that, in substance, sought to set aside both the entry of default and the default judgment. For example, although the motion's prayer for relief does not expressly request that the default be set aside, it

3

### 1. *Barajas declaration*

The Barajas declaration describes the incident as "a motor vehicle accident on March 19, 2016 on eastbound Van Nuys Boulevard near the intersection of Canterbury Avenue in the City of Arleta in which . . . Sandoval . . . negligently made a U-turn in his 2012 Dodge Caliber in front of my 2013 Dodge Charger and then veered into a parked vehicle." Barajas declared "[o]n information and belief," that Sandoval "was at fault for the incident and his insurance carrier accepted liability."

As to service, Barajas declared that he had not received the summons or complaint, and that he "was not aware until recently of any alleged substituted service via [his] wife Maria Perez, which [he] dispute[d]." Barajas declared that he first learned

---

includes a request that the court permit Barajas to file an answer, which would only be possible if the court also set aside the default. The court appears to have shared this understanding; its order on the motion grants the "motion to set aside/vacate *default and default judgment . . .* and quash service of summons." (Capitalization omitted & italics added.) The court's tentative ruling, which was ultimately adopted and incorporated into the order, refers to a "motion to set aside/vacate default" (capitalization omitted), and the court's order also required Barajas to "file a separate answer within 10 days." (Capitalization omitted.) Because the motion appears to have been one that, in substance, the court and the parties understood as seeking to set aside both the default and the default judgment, we likewise treat it as such. In any event, the same extrinsic mistake requirements would apply whether Sandoval is seeking to reverse an order setting aside only the default judgment or an order setting aside both the default and default judgment. We shall refer to the motion as simply "the motion to set aside."

anything about the lawsuit from a March 24, 2020 Department of Motor Vehicles (DMV) "order of suspension" (capitalization omitted) that he received "around [that date]." It informed Barajas that his driver's license had been suspended because he had "failed to pay the judgment awarded" in a lawsuit, which the document identified by full name and case number. (Capitalization omitted.) He "understood the notice had something to do with a dispute relating to Jamie Sandoval" and forwarded it to his insurance company "in an attempt to determine what [it] meant." The insurance agent, Joel Velasquez-Hernandez, told Barajas "he did not have any information on this claim or any court proceedings." (Capitalization omitted.)

Barajas declared he only became aware of the litigation in April 2022 when his counsel informed him of it. According to the declaration of Barajas's counsel, she contacted him at this time after his insurance carrier contacted her in April 2022 "to assist in the filing of [the] motion [to set aside] . . . following a period of settlement negotiations" between the insurance company and Sandoval/his counsel.

### 2. *Declaration of Barajas's insurance agent*

Velasquez-Hernandez declared that "Maria Perez and . . . Barajas [had] called and informed [him] in 2020 that . . . Barajas'[s] license had been suspended [and] that they were unsure if litigation had been filed relating to . . . Sandoval." At that time, Velasquez-Hernandez "tried to investigate what was going on with the claim" but "was not able to determine any information regarding the status of this claim, and informed . . . Perez and . . . Barajas of such." Velasquez-Hernandez "did not have access to the policy file [covering Perez and Barajas] or any

5

related documentation prior to 2018 when [he] purchased the policy."

### 3. *Declarations of Barajas's wife and former neighbor*

Both Barajas's wife (Perez), and his former neighbor at the Parthenia Street apartment, Alvaro Rojas, declared that Perez assisted Rojas with his catering business on Saturdays and Sundays, and that on the morning of Saturday February 24, 2018—the date and time the proof of service stated a process server had handed Perez the summons and complaint at the Parthenia Street apartment—Perez was at Rojas's apartment next door, assisting him with food preparation. Both Perez and Rojas further declared that no one came to the door or handed her any papers that morning, and Perez declared she had never received them.

Perez further declared that, both at the time of her declaration and on February 24, 2018, she had "blonde hair, bluish green eyes, [was] 5 feet, 4 inches to 5 feet, 5 inches tall, and [weighed] approximately 300 to 325 pounds."[2] The proof of service of the summons and complaint, by contrast, described the "Maria 'Doe'" to whom the papers had been provided as being "5 feet 1 inches [tall and] 160 pounds" with "black hair, brown eyes." (Capitalization omitted.)

### 4. *Supplemental briefing and evidence*

At the initial hearing, the court requested supplemental briefing and evidence on specific issues, including "any and all

___

[2] The Velasquez-Hernandez declaration provided a consistent description of Perez as "hav[ing] fair skin, green eyes, blonde hair, and [being] heavyset."

communication with the insurance companies in regard to [the] accident and civil complaint and default judgment" (capitalization omitted) and how Barajas could reasonably claim he did not receive case-related documents mailed to what he acknowledged was his residence at the time, particularly when he had received the DMV notice in the mail.

### a. *Supplemental evidence regarding mail issues*

In his supplemental declaration, Barajas stated that "[e]ach apartment in the [Parthenia apartment] building had its own mailbox, accessible with a key. [¶] . . . Around the time the summons and complaint were reportedly mailed . . . and around the time the request for entry of default was reportedly mailed . . . [Barajas and Perez] frequently found [their] mailbox and other mailboxes on the property belonging to other apartments unlocked and open. [¶] . . . [They] brought this up to the property manager, . . . [who] would blame the mail carrier for the issue. [¶] . . . As a result of [his] mailbox frequently not being secure, [Barajas] believe[d] that others could access [his] mail around the time that the summons and complaint and request for entry of default were mailed." (Capitalization omitted.)

Barajas further clarified that he had received the DMV suspension notice at an address other than the Parthenia Street apartment—namely, a Bradley Avenue address in Sylmar reflected on the DMV notice as well. Barajas further declared that, although he "did not call the court after receiving the [DMV notice,]" he "did call the DMV . . . and [his] insurance agent, Joel Velasquez-Hernandez. [His] understanding of [his] conversation with . . . Velasquez-Hernandez was that after 2 years the

7

information regarding this case had been erased, and there was no further action to take." (Capitalization omitted.)

             b.     *Supplemental evidence regarding communications with insurance carriers*

Both parties offered supplemental declarations with information relevant to communications with the parties' respective insurance carriers: Farmers Insurance (Farmers), which covered both Perez and Barajas, and AFA Insurance, which covered Sandoval.

Barajas offered a declaration of Charlene Poon, the Farmers adjuster handling claims related to the instant matter. Poon's declaration describes and attaches several written communications in 2016 and 2017 that appear to confirm that the claims related to the collision had been resolved. Namely, "Farmers wrote a [December 9, 2016] letter to . . . Perez, indicating that a final settlement had been reached with AFA Claim Services" and that AFA had "accepted 100 [percent] liability on [Sandoval's] behalf." "On January 10, 2017, Farmers . . . sent . . . AFA . . . a letter enclosing the property damage release executed by . . . Perez for the amount of $7,664.29 to be paid to" Farmers/Perez. "[I]n addition to the property damage claims paid . . . AFA . . . paid a personal injury settlement of $12,000.00 to . . . Barajas on April 19, 2017 regarding the subject incident" and "paid . . . Sandoval $18,676.23 for a property damage claim after the subject incident."

A supplemental declaration of Sandoval's counsel states AFA refused to cooperate with counsel's extensive efforts in 2016, 2017, and 2018 to clarify the basis for AFA's liability determination and AFA's apparent lack of investigation

8

preceding it. "AFA had never contacted [Sandoval's counsel] to take Sandoval's statement and there was no witness other than the drivers, . . . [¶] . . . [t]here was no police report for the subject accident." Sandoval's counsel describes her numerous efforts to "dispute [AFA's] accepting liability on behalf of [Sandoval] without taking any statements or conducting any investigation," and AFA's failure to respond to her inquiries and requests and refusal to produce the claim file.

One document attached to Sandoval counsel's declaration suggests AFA's acceptance of liability on Sandoval's behalf might have been based on some confusion on the insurer's part. Namely, a January 9, 2017 letter from AFA to Sandoval's counsel declining to reconsider AFA's liability determination refers to the claimant as "Catalina Montoya," although, by all accounts, no one by that name was involved in the collision. The letter otherwise appears to be referring to the Sandoval-Barajas collision, in that it includes the date of that collision, applicable claim number, and other details of the accident—for example, the street name and the direction in which Sandoval was traveling. Also in this letter, AFA states that the collision was "initially reported to us by Steve Franquez" who "reported that [Jamie] Sandoval was turning out of [a] parking space on the street and attempted to make a U-turn[,] causing the collision."

### D.    *The Challenged Order*

After argument the court took the matter under submission. In a December 8, 2022 order, the court granted Barajas's motion to set aside. The court explained its decision in a written ruling.

9

### 1.     *Evidentiary rulings*

Two of the court's rulings on evidentiary objections form the basis for one of Sandoval's arguments on appeal.  Namely, the court sustained Sandoval's objections to Barajas's declared description of the accident and his "information and belief" statement that Sandoval's insurance had determined Sandoval was at fault.  Sandoval objected on the bases that (1) the testimony constitutes an "[i]mproper legal conclusion as to stating [Sandoval] was driving 'negligently' " and as to stating Sandoval had been deemed to be "at fault"; (2) it is speculative and improper "[t]o the extent the testimony is lay opinion"; (3) it is argumentative; and (4) it misstates the evidence.  The court's order does not specify why the court sustained Sandoval's objections to this testimony.

### 2.     *Ruling granting motion to set aside*

The court granted Barajas's motion to set aside on the equitable ground of extrinsic mistake.  The court's written ruling explained why the court had rejected several other bases for relief proffered by Barajas.[3]  Namely, the court concluded the judgment was not void on its face, because Sandoval's proof of service was valid on its face.  Second, the court concluded the judgment could not be set aside pursuant to Code of Civil Procedure section 473.5[4] for lack of actual notice because the two-year jurisdictional time limit for seeking relief under that section had

---

[3] In so doing, the court made some findings potentially relevant to the issues raised on appeal.  We therefore summarize the court's reasoning in rejecting these arguments.

[4] All further statutory references are to the Code of Civil Procedure.

passed.  Finally, the court rejected Barajas's argument that the judgment should be set aside because of extrinsic fraud. The court found the declaration of the registered process server to be credible, and that the declaration "establishe[d] more likely than not that the person identifying herself as 'Maria' was a competent member of the household" in that she was "an adult over 18 who appear[ed] to be a co-occupant of a residence, [but] refuse[d] to provide a name."  (See § 415.20.)  "In addition, the court accept[ed] as credible that the documents were mailed to [Barajas] as noted in the proof of service."  (Capitalization omitted.)  On these bases, the court concluded not only that Barajas had failed to establish extrinsic fraud regarding the proof of service, but that none had occurred.

The court, however, did find that Barajas was entitled to equitable relief based on extrinsic *mistake*:  namely, he had made out " 'a meritorious case,' " " 'a satisfactory excuse for not presenting a defense to the original action,' " and " 'diligence in seeking to set aside the default once . . . discovered.' " (Capitalization omitted.)  As to the first requirement, the court concluded that Barajas had "declared that [Sandoval] made an illegal U-turn that caused the accident" and that "[Sandoval's] own carrier . . . received corroborating information [to this effect] from an independent third party, Mr. Franquez."  (Capitalization omitted.)  The court further found that both Barajas's failure to respond to the initial complaint and notices of default and Barajas's delay in seeking to set aside the default and/or default judgment were attributable to negligence on the part of Barajas's insurance carrier.  "In sum, on this record, [the court concluded] it would be unjust to allow a [default] judgment [and the underlying default] to stand against [Barajas] because of [his]

11

insurance carrier's repeated breach of its duty to promptly defend [him]."

Sandoval timely appealed the court's order.

**DISCUSSION**

"A motion to set aside a default judgment [and the underlying default] is addressed to the sound discretion of the trial court, and, in the absence of a clear showing of abuse of discretion where the trial court grants the motion, the appellate court will not disturb the order." (*Weitz v. Yankosky* (1966) 63 Cal.2d 849, 854 (*Weitz*).)  "It is the policy of the law to favor, wherever possible, a hearing on the merits." (*Ibid.*) Nevertheless, "[w]hen a default judgment has been obtained, equitable relief [therefrom] may be given only in exceptional circumstances." (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 981 (*Rappleyea*), italics omitted.)  Such circumstances may exist as a result of "extrinsic mistake—a term broadly applied when circumstances extrinsic to the litigation have unfairly cost a party a hearing on the merits." (*Ibid.*)  Thus, a "stringent three-prong test" applies when a defendant seeks relief from a default and default judgment on this basis.  (*Id.* at p. 982.) " 'First, the defaulted party must demonstrate that it has a meritorious case.  Second[ ], the party seeking to set aside . . . must articulate a satisfactory excuse for not presenting a defense to the original action.  Last[ ], the . . . party must demonstrate diligence in seeking to set aside the default once . . . discovered.' [Citation]." (*Ibid.*)

Sandoval argues the court's ruling that Barajas had satisfied these elements was inconsistent with " 'the applicable principles of law,' " and thus the court abused its discretion in setting aside the default and default judgment. (*Horsford v.*

*Board of Trustees of California State University* (2005) 132
Cal.App.4th 359, 393; see *ibid.* [" '[a]ction that transgresses the
confines of the applicable principles of law is outside the scope
of discretion and we call such action an "abuse" of discretion' "].)
We disagree and address each requirement below.

### A.    *Meritorious Defense Requirement*

Sandoval argues that, in assessing whether Barajas had
a meritorious defense, the court improperly relied on evidence
it had excluded—namely, the Barajas declaration's description
of Sandoval making "an illegal U-turn," to which the court
had sustained Sandoval's objection.  (Capitalization omitted.)
But other evidence—including the determination by Sandoval's
insurer of his liability—also support that Barajas had a
meritorious defense.  Thus, even if the court relied in part on
inadmissible evidence in concluding Barajas had established
a meritorious case,[5] we cannot say this renders the court's
conclusion an abuse of discretion, given the other evidence
supporting that same conclusion.  (See *Montenegro v. Diaz* (2001)
26 Cal.4th 249, 255 (*Montenegro*) [in reviewing for abuse of
discretion, "we must uphold the trial court 'ruling if it is correct
on any basis, regardless of whether such basis was actually
invoked' "].)

Sandoval next argues the claimed other evidence
is insufficient to satisfy the meritorious defense element,
noting, for example, the lack of a declaration from the witness

---

[5] Although it is not clear that the court meant to exclude all
parts of Barajas's declaration describing the accident, even if we
exclude it all, sufficient other evidence supported the meritorious
defense element, as discussed above.

(Franquez) referenced in his insurer's report.  This argument challenges the adequacy of the evidence to *prove* fault or liability, which was not the issue before the court.  The court needed only to determine whether Barajas had a colorable response to the allegations in the complaint.  (*See Weitz, supra*, 63 Cal.2d at p. 854 ["appellate courts are much more disposed to affirm an order where the result is to compel a trial upon the merits than they are when the judgment by default is allowed to stand and it appears that a substantial defense could be made"].)  For this reason, courts have accepted far less than evidence *proving* a defense to satisfy the meritorious defense element.  (See *Stiles v. Wallis* (1983) 147 Cal.App.3d 1143, 1148 (*Stiles*) ["merely attaching a verification to a proposed answer is sufficient to demonstrate meritoriousness"]; *Rappleyea, supra*, 8 Cal.4th at p. 983 [unverified answer combined with declaration of "lawyer who informally aided defendants . . . that he believed 'these defendants have a very good (and certainly a justiciable) defense to the plaintiff's claim' " sufficient], capitalization omitted.)  The court did not abuse its discretion in finding Barajas had satisfied this element.

### B.    *Excused Failure to Respond in Litigation Requirement*

Sandoval argues that "the superior court made precisely zero findings [as to] . . . Barajas'[s] diligence prior to the entry of his default, even after finding that he was duly served with process" (italics omitted), and that "the trial court's finding was solely that . . . Barajas'[s] purported reliance on his insurance company *after* the default judgment was entered, was an excusable mistake."  As a preliminary matter, this is not an accurate characterization of the court's ruling.  Rather, the

14

court concluded that *both* "the delay in presenting a satisfactory defense *and* in promptly seeking relief [was] attributable to [Barajas's] insurance carrier."  (Italics added.)

Moreover, the court did not abuse its discretion in concluding Barajas had been diligent.  First, although the court failed to make an express finding that Barajas did not receive the summons and complaint and the request for default, we may infer from the court's ruling an implicit finding to this effect.  At the initial motion hearing, the court expressed skepticism that Barajas did not receive notice of the litigation before entry of the default and/or default judgment, but then expressed no such concerns after receiving supplemental evidence regarding the unreliability of Barajas's mailbox.  From this and the court's overall ruling, we may imply the court found Barajas did not receive these documents.  In reviewing for an abuse of discretion, we "indulge all legitimate and reasonable inferences in favor of upholding the trial court's findings" (*Bookout v. Nielsen* (2007) 155 Cal.App.4th 1131, 1137–1138) and may affirm on any basis reasonably supported by the evidence.  (*Montenegro*, *supra*, 26 Cal.4th at p. 255.)

Such an implicit finding is also supported by the evidence. The court could have deemed credible Barajas's uncontradicted declaration that he never received the litigation documents mailed to him, and the declarations supporting that Perez was not the "Maria 'Doe' " who accepted service of the summons and complaint.  Such findings are not in tension with the court's conclusion that the complaint's proof of service was not fraudulent, and that service was proper.  This is because, in order for the substituted service on Barajas via Maria Doe to be proper, Maria Doe needed only to *appear* to be a member of Barajas's

15

household—which could be true, even if she was not a member of the household. And if one accepts Barajas's supplemental declaration that others could and did access his mailbox at the Parthenia Street apartment, often leaving it open, Barajas may not have received the litigation documents that the proofs of service stated were mailed to him, despite, as the court found, those proofs of service being truthful.

Second, Barajas could reasonably have relied on his insurer's representations in 2016 and 2017 that Sandoval's insurance carrier had accepted full responsibility for the accident if, as we conclude the court implicitly found, Barajas was unaware at the time that Sandoval had sued him in connection with the accident. As a result, the court could have accepted that Barajas reasonably believed that any dispute regarding the collision had been resolved by his insurer's settlement with Sandoval's insurer. Indeed, there is evidence suggesting AFA (Sandoval's insurer) made a payment to Barajas as a result of a settlement. Our state Supreme Court has held that reasonable reliance on a third party, including an insurer, to protect one's interest in a dispute can excuse a failure to respond to litigation which results in a default and default judgment. (See *Weitz, supra,* 63 Cal.2d at pp. 855–856.) That is what the trial court's decision impliedly found and what distinguishes the instant matter from the cases on which Sandoval relies. In the cases Sandoval cites, the defendants provided either no excuse at all, or no reasonable excuse. (See, e.g., *Sporn v. Home Depot USA, Inc.* (2005) 126 Cal.App.4th 1294, 1301 ["[T]here is no statement that the papers were lost, stolen, forwarded to the wrong person, or eaten by the dog. Nothing in the record discloses what caused defendant to ignore the summons and complaint, [or] the letter

16

from plaintiff's lawyer . . . . No excuse, satisfactory or otherwise, was presented"]; *Stiles, supra*, 147 Cal.App.3d at p. 1148 [defendant seeking to set aside "flagrantly ignore[d] the responsibility to present a defense" and failed to "demonstrate a satisfactory excuse for not responding to the original action in a timely manner"].)

### C.   *Diligence in Seeking Relief*

Whether a defendant was sufficiently diligent in seeking relief from a default and/or default judgment " 'depends upon the circumstances of that particular case' " (*Benjamin v. Dalmo Mfg. Co.* (1948) 31 Cal.2d 523, 528 (*Benjamin*)), and "[w]hether a party has acted diligently is a factual question for the trial court" (*Huh v. Wang* (2007) 158 Cal.App.4th 1406, 1420). "[I]n 'the determination of that question, a large discretion is necessarily confided to [the trial] court' [citation], [but] there must be some showing—some evidence—as the basis for the exercise of such discretion." (*Benjamin, supra*, at p. 528.)

Here, the court attributed the delay between Barajas's learning of the default/default judgment and the motion to set aside to the negligence of Barajas's insurance carrier, not to any lack of diligence by Barajas. The record supports this attribution. The court implicitly found the DMV notice was the first notice Barajas had received referencing a lawsuit. Multiple declarations established that Barajas promptly reached out to his insurer upon receiving the DMV notice. Given that his insurer had previously informed him the matter had been resolved via an insurance claim—and that the notice was from the DMV, not a court—the court did not err in finding that Barajas reasonably relied on his insurer to address the problem brought to his attention by the notice. (See *Weitz,*

17

*supra*, 63 Cal.2d at pp. 857–858 [a defendant's "reli[ance] upon another interested party . . . reasonably justified under the circumstances" is a factor "in determining whether a delay in moving to set aside a default judgment is excusable"].) Nor does the record support that, after the DMV mailing, Barajas received any further communications suggesting that his insurer was not, in fact, resolving the issue. (See *Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 508 (*Cruz*) ["[i]n cases in which courts have found that a defendant's reliance on a third party was reasonable, the defendant received no further information about the status of the litigation after submitting the complaint to the third party"].) Moreover, the court could have deemed credible and reasonable Barajas's declared testimony that he considered the issue resolved after his insurer confirmed—two years after an apparent insurance settlement—that there was no record of any litigation about the accident.

But that Barajas acted reasonably in relying on his insurer to investigate and address the default judgment referenced in the DMV notice does not end our inquiry as to diligence. At least two cases have held that, "in order to obtain relief from default, [such a defendant] must also establish justification for the inaction of the [insurance] carrier." (*Scognamillo v. Herrick* (2003) 106 Cal.App.4th 1139, 1149 (*Scognamillo*), citing *Don v. Cruz* (1982) 131 Cal.App.3d 695, 702.) This additional requirement is necessary because, under such circumstances, the insurer is effectively the real party in interest, and may be held accountable for its lack of diligence. (See *Scognamillo, supra*, at p. 1149; *Don, supra*, at p. 702.) To do otherwise invites an insurer to " 'shield[ ] itself behind the blamelessness of its insured' " and thereby potentially "make[ ] a shambles of orderly

18

procedure." (*Scognamillo, supra*, at p. 1149; see *ibid.* [" ' "[w]hen inexcusable neglect is condoned even tacitly by the courts, they themselves unwittingly become instruments undermining the orderly process of the law" ' "].)

Barajas failed to establish his insurer's diligence below—indeed, the court expressly found that Barajas's insurer had "repeated[ly] breach[ed] . . . its duty to promptly defend [Barajas]," a finding neither party challenges on appeal. "The greater the prejudice to the plaintiff from vacating the default[,] the greater the burden on the defendant of proving diligence and vice versa." (*Falahati v. Kondo* (2005) 127 Cal.App.4th 823, 833–834; see *Rappleyea, supra*, 8 Cal.4th at p. 984.) Here, setting aside the default would substantially prejudice Sandoval in that it would force him to try his case over eight years after the accident took place. Given the substantial showing of diligence needed to justify the prejudice to Sandoval from setting aside a years-old default judgment, Barajas, although "a blameless insured[,] is to be charged with the inexcusable neglect of [his] insurer[ ]" for the purposes of the diligence element of extrinsic mistake. (*Scognamillo, supra,* 106 Cal.App.4th at p. 1149.) Accordingly, the trial court abused its discretion in concluding Barajas had established diligence sufficient to permit the court to set aside the default and default judgment.

19

## DISPOSITION

The order is reversed.  The parties shall bear their own costs on appeal.

<u>NOT TO BE PUBLISHED</u>.


ROTHSCHILD, P. J.

We concur:



BENDIX, J.



WEINGART, J.